Nott, J.,
delivered tbe opinion of tbe court:
This case comes before us on tbe report of commissioners, to whom it was referred on tbe claimants’ motion and exceptions filed thereto by tbe defendants. Tbe court, acknowledging tbe immense labor expended on tbe case by tbe commissioners and regretting tbe needless expense which tbe claimants bave imposed upon themselves, is nevertheless constrained to say that tbe commissioners proceeded upon a false theory, and that tbe case must be considered upon tbe finding of facts now substituted for tbeir report.
Tbe court has given prolonged and careful consideration to tbe elaborate arguments of tbe eminent counsel who presented it for the claimants, and has little doubt of very serious losses having been incurred by tbe claimants in consequence of alterations and delays ordered by tbe defendants’ officers, but is never- *231 tbeless constrained to bold that some of these losses were not such as are known to the law as damages, and that the, remainder were given away by the settlements into which the claimants (in a legal sense) voluntarily entered. The amount sought, to be recovered is very large and the elements of damage are of unusual magnitude, but the questions presented by the case are not involved, and the principles which must control our decision are few and simple.
Briefly stated, the principal facts amount to little more than these:
The claimants agreed to build two vessels at a stipulated price, and the defendants reserved a right to order changes and alterations in the work. The defendants requested alterations to be made, and the claimants acceded to the request and performed the additional work involved. The claimants, having been paid the contract price of the original agreement, sent in their bills for the extra work and materials. The defendants revised the bills and tendered a reduced amount. The claimants accepted the reduced amount and receipted therefor in full. What, then, is left for a party thus circumstanced to sue for ?
The claimants’ counsel are understood to answer this question by saying that while the defendants had the right to order alterations, still, that the sum-of the alterations ordered should have b,een restricted to such an amount as would not necessarily have extended the entire work beyond the fixed period within which the contract bound the contractors to complete it. A serious question of construction might be presented here, if the claimants had stood upon their supposed contract rights and the matter were res nova. But the acts of the claimant and the decision of the Supreme Court in Choteau’s Oase (95 IT. S., 01) remove all doubt. The contract there and the contract here were identical in terms, and the alterations ordered and delays caused were substantially the same; but we understand the Supreme Court to have decided, in effect, that so long as the alterations ordered were incident to the novelty of the undertaking and were made by the officers of the government without unnecessary delay, they must be regarded as coming within the defendants’ privilege, secured to them by the pro-Adsion of the contract, and cannot be regarded as forming a ground for damages. >
*232 The claimants’ counsel are further understood to say that tbe defendants’ officers ordered changes upon changes and caused delays upon delays, so that the construction of the vessels was extended through a period six times as long as that prescribed by the contracts, during which the prices of material and labor were constantly rising; that the defendants, while thus greatly enhancing the actual cost of the vessels, paid to the claimants for the contract work nothing more than the contract price; and that the acquiescence of the claimants in the alterations and delays ordered and caused by the defendants’ officers was not voluntary, they, in fact, yielding to the eminent necessity of the day, which would have justified the government, if they had refused, in seizing their works and making the alterations with its own employés. Whatever may have been the motive of the contractors, it is certain that in all the transactions, correspondence, and conversations between the parties there is not a vestige of threats, intimidation, or coercion on the one side, nor of objection, remonstrance, or protest on the other. The overshadowing power of the government may have been before the eyes of the contractors, but it does not appear upon the records of the case. Judged'by the evidence which the claimants have produced, all of their acts were voluntary, and their rights in the premises must be measured by the rule which would be applied to ordinary contractors.
That rule is briefly this: Where a defendant has hindered and delayed a plaintiff in the performance of his work, as in Smith's Case (11 C. Cls. R., 797, affirmed 94 U. S., 214), his acts are in the nature of a breach, and he is liable to the plaintiff in whatever damages his wrongful acts may have caused; but where, as in this case, the defendant requested additions to or alterations of the contract work, which the plaintiff acceded to and performed, the latter cannot hold the defendant liable for resulting losses by treating the transaction as a breach, but must find his compensation for incidental delay in the price which he charges or accepts for the extra work.
In contemplation of law, such a plaintiff consented to the change; the motive or consideration operating upon his mind was the profit which he expected to make on the extra work. If a new contract by the voluntary agreement or consent of the plaintiff thus took the place pro tcmto of the old one, and the delay which followed was incident to the changes agreed upon, no *233 breach, can be imputed to the defendant; and, consequently, the measure of damages which must govern the case is not that which applies to cases of breach, viz, that the jury will find such damages as will make the plaintiff whole.
One item in the case furnishes a clear illustration of this principle (Finding X). The defeiidants ordered a suspension of the work. The purpose of the suspension, as the claimants were informed, was to effect certain alterations and enlargements in the vessels. The suspension continued from the 16th June to the 20th September. The claimants neither protested against nor objected to the suspension of the work so ordered, nor notified the defendants that any damage would result to them thereby. So soon as the detailed specifications and drawings were furnished to them, they offered to make the changes ordered for the sum of $89,000 for each vessel. Their proposition was accepted, the work was done, and the price paid. Nothing had been said on either side about. damages caused by the delay, nor did the claimants reserve a demand for such damages when they made their offer nor when they accepted payment for the work. Upon such a statement of facts the law supposes that they included their damages in the price which they asked, and found compensation for their losses during the period of suspension in the profits which they made or expected to make out of the new work.
But the claimants further insist-that the price paid for other extra work done under implied contracts, that is to say, for the greater portion of the changes and alterations ordered, was “ arbitrarily fixed and determined without consultation with or the assent of the claimants,” and that their acceptance of the amount tendered, accompanied by the giving of receipts in full, does not bind them as a final settlement of their demand. To this it must be replied that they should have done in 1866 what they have done now; they should have brought an action against the government if they did not intend to accept payment at the rates fixed by the defendants’ officers. That want of money does not constitute duress, and that acceptance of payment and giving a receipt in full, when the price was not a matter of express agreement, is a conclusive and final settlement binding theparty, are propositions which have been so repeatedly decided of late in similar cases, that it is unnecessary to cite authorities or discuss them further. Whether the claimants were consulted or *234 willingly acquiesced in the reductions made by the defendants’ officers is utterly immaterial, so long as it appears that they voluntarily accepted the payment tendered as payment in full.
This brings us to the last and most involved position taken by the claimants, which is that the payments made for extra work did not in fact include everything which the claimants should have been paid for, and are to be regarded as final and conclusive only so far as they go. Unquestionably payment for one thing is not necessarily payment for another, provided the two things are so distinct as to. form per se independent causes of action. Payment for the smoke-stack of the vessel would not include payment for her anchor; payment for the vessel would not necessarily include payment for her cabin furniture. But here we find that the things for which a recovery is sought are really things incident to the things paid for. Undoubtedly, if the claimants had not accepted payment for the extra work and had brought their action, these things would have formed elements of damage when the court came to determine the amount of its judgment. But they cannot be set up separately or regarded as anything more than a part of the cost of the things paid for. The tilings sued for are delay, insurance, rent, interest, and profits, things which enter into every business and form elements of cost in every article bought and sold. In ordinary cases they are rarely a subject of consideration, and they come to the surface here only because the magnitude of this case is such that they are in a measure tangible from their extraordinary dimensions.
If the claimants had gone to a carriage-maker to build them a wagon with wooden hubs at a specified price, and after the wheels were built had requested him to put in iron hubs of a peculiar pattern, and had subsequently paid him the contract price of the wagon and his bill, less their reductions, for the iron hubs and alteration, and he liad receipted for both payments as payments in full, what would be thought of his subsequently bringing an action against them and assigning as damages the rise of prices of material that went into the wagon during the period of delay, the rent of his shop, interest on his capital, insurance on his stock, and profits on the material purchased and Avages paid'? Yet these are precisely the elements of cost Avhieh form the subject-matter of this suit. We are of the opinion that they should have been included in the prices paid for the extra *235 work. If an authority be necessary to sustain so plain a proposition, we think it can be found in the recent case of Baird (96 U. S., 430).
The judgment of the court is that the report of the commissioners be not confirmed, that the findings of fact now filed stand in lieu of suclnreport, and that the claimants’ petition be dismissed.