Howry, J.,
delivered the opinion of the court:
This is a claim of the contractors for the construction of a dry dock at Norfolk, Va. The only item covered by the testimony taken is the one for the damages caused by suspension of the work of pile driving 53 days.
The specifications placed the civil engineer in charge of the work with full control and direction subject to appeal to his chief; required the eontractors to commence work immediately after execution of the contract (and continue without interruption) and complete the work within 36 calendar months from the date of execution of the agreement. There was a provision for annulling the agreement in case of failure to complete on time, and liquidated damages at the rate of $50 per day were provided for by way of deduc* tion for such failure.
The structure proper and wing walls were to be founded on piles, and test piles were to be driven to constitute a portion of the permanent piles of the dock. Provision was made, however, that bearing piles might be omitted in order to reduce the cost $70,000, but there was no provision in the contract to lessen the obligation of the contractors to proceed with all necessary work to complete on time. In reserving the right to substitute concrete the Government stipulated to exercise the privilege in that regard affirmatively. In the absence of the exercise of the privilege the specifications requiring the dock to be founded on piles remained absolute.
*447 A few weeks before the contractors began driving the piles they were urged to make more rapid progress to the end that the dock should be completed within the time provided for by the agreement. After several conferences with the Chief of the Bureau of Yards and Docks by the civil engineer and one of the plaintiffs, it appeared that the chief of the bureau stated that he desired piles driven, and only after 700 had been placed were the contractors stopped by orders of the chief of the bureau, communicated to them through the civil engineer in charge of the work. These orders were accompanied with the statement from the chief of the bureau that the work should be stopped until he should decide the question of founding the work upon piles.
In a conference about the matter on or about December 12, 1904, the chief ’of the bureau stated that he would give a decision immediately. Again, on December 29 thereafter, an early decision was requested of the chief of the bureau by one of the contractors so that they might proceed with the work. It was not until January 25, 1905, that the civil engineer in charge received a telegram from the Bureau of Yards and Docks stating that the chief of the bureau had decided to put in piles throughout the entire length of the dock.
The contention of the defendants is that there was no such breach of the contract arising out of the fact that the chief of the bureau delayed the decision as constituted a breach of the contract. In support of the contention it is urged that although no reason has been assigned why the decision could not have been made at the time or soon after the driving of the piles was suspended, nevertheless it must affirmatively appear that the time taken to decide the question of omitting the piles was unreasonable. The argument means, if it means anything, that if the decision was suspended for an unreasonable time there was a breach of the contract, but that it became incumbent upon plaintiffs to prove that defendants had no excuse for delaying so long.
The prerogative of determining whether or not the piles should be omitted belonged to the chief of the bureau, because under the contract it was to be decided by him “ during the *448 progress of the work.” This officer might have stopped the contractors at any time, and in the exercise of the right the bureau was fairly entitled to a reasonable time within which to reach a conclusion. On the other hand, no objection had been raised to the driving of more piles than those denominated as test piles. In driving as many as 700 piles before the work was actually stopped plaintiffs properly attempted to carry out their obligations. They had more than complied with the requirement as to the number of piles to be driven by way of test piles, and they had a right to assume that there would be no change in the specifications. The contract required the work to proceed without interruption.
The court is of the opinion that it became the duty of the defendants to account for a part of the delay. The Government’s agents knew the causes which operated upon the defendants to delay the work of the contractors and to so show these causes as to enable the court to determine where the fault lay and whether the defendants either were or were not excusable. That no proof has been taken by the defendants shows that they had no explanation to offer, but, on the contrai’y, justifies the inference that the delay was the result of inattention. It is reasonably certain that but for the interference of the defendants in stopping the driving of piles the work would have proceeded and damage to the plaintiffs would have been avoided. Plaintiffs say that nearly two months elapsed before the decision was actually given, when, as a matter of fact, the decision to change to concrete could have been given at the start. The court finds thac there was an unreasonable delay of at least 20 days. Admitting that it would take some time for the subordinate officers to prepare proper reports and for the superior officers to digest the information gained and to consider such conditions as were made apparent by the excavation work, we are satisfied that the work was delayed an unreasonable length of time. In so deciding we admit also that we are taking some responsibility in laying down a proposition predicated on the evidence and the circumstances arising out of the evidence that may at some time possibly cause departmental embarrassment, Reasons unknown to courts may be caused *449 by many circumstances. Because of this the court does not wish to be understood as creating a precedent in this case for other cases of department delays or as establishing a general rule of universal application. Each case of alleged delay must stand upon its own merit where contractors complain, not only because there is involved the matter of unexplained delays but likewise because the good or bad faith of public officers is frequently involved which materially affects the Public Treasury in the many cases of large contracts between the Government and individuals.
In the view we have taken of the case, we are of opinion that the natural consequences of the stoppage of the work justly entitle plaintiffs to recover for the time disclosed by the findings. Figh v. United States, 8 C. Cls. R., 319; Smith v. United States, 11 ibid., 707, which was affirmed by the Supreme Court; 12 ibid., 119; Cotton v. United States, 38 ibid., 536.
Judgment on these findings will be entered in favor of the plaintiffs for $1,020.