(No. 1953—

THORNTON CARTAGE COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 1, 1933.*

CAMERON & HEALTH, for claimant.

OTTO KERNER, Attorney General; CARL DIETZ, Assistant Attorney General, for respondent.

Mr. JUSTICE LINSCOTT delivered the opinion of the court:

Claimant is seeking damages to the extent of $6,393.35 from the State as damages, because the Department of Public Works and Buildings failed to furnish a portion of the necessary right-of-way required for the construction project with resulting changes in the plans and specifications of a certain contract. The original contract was No. 4257, and was

executed on October 4, 1930, and provided for certain grading operations and hard road construction on S. B. I. Route 19, Section 70, A-2, in Cook County. The contract contemplated construction of a newly located portion of said S. B. I. Route 19 at its intersection with the county highway known as Dundee Road. In addition, an underpass was to be constructed where it crosses Dundee Road, and a ramp or connecting highway was to be constructed leading from Route 19, west of the intersection, connecting it with the Dundee Road. The ramp was to be constructed north of Route 19 and running in a parallel direction.

There was a stipulation of facts.

It appears that the first delay of sixteen (16) days occurred between October 9th and 28th, 1930, two days after the work was started and during this time a portion of claimant's equipment remained idle. This temporary suspension was ordered by the Division of Highways when it was discovered that right-of-way for the north ramp had not been secured from the Forest Preserve District of Cook County. Question had arisen in regard to its precise location.

Originally the plans had called for work to be commenced in grading operations on the north ramp and this change in plans and specifications was the cause of the first delay period. Claimant then began work on the new location of the right-of-way on Route 19, all of which had been secured. He was engaged in this work until February 12, 1931, when claimant was directed to build it at a new location. There was sixty-three (63) days in this second period of delay from February 12 to April 27, 1931. The items of claim for the two periods of delay involved idle equipment resulting therefrom.

The original contract price was $71,533.10 for this work. It was essentially a grading contract with a small amount of concrete pavement. In the letter of award it was specifically stated that certain right-of-way, namely from Station 43/50 to Station 45/10, from Station 49/00 to Station 59/00, and from Station 139/00 to Station 145/00 had not been acquired and that the contractor should not start work within these limits until further notified. The contractor at that time was also advised that he should start work on the re-

mainder of the section immediately, which included the proposed north ramp, between Station 1/00 to Station 11/30.

The amount claimed as damages was on account of delays encountered which were not referred to in the paragraph above stated, and which supposedly were clear at the time of the award.

The contractor claims damages to the extent of $2,410.40 for delays to his grading equipment for the period from October 10th to October 28th, when he was unable to operate on account of right-of-way difficulties. It appears that the contractor moved in good faith and that just before starting construction operations, he was notified by the engineer that on account of right-of-way difficulties no work should be done within certain limits. It was not possible to work at other points during that time and he was obliged to lay up his outfit for sixteen (16) days.

It also claims $3,982.95, which is likewise due to the right-of-way difficulties, and it appears from the record that the contractor performed all the work possible where the right-of-way was clear, and he was obliged to lay up his outfit for the period from February 12 to April 27, when he was notified that certain portions of the right-of-way were clear.

The questions here presented are:

1. Whether or not a contractor is justified in presenting a claim for delays which arise due to right-of-way, bearing in mind that at the time of the award the right-of-way was supposedly clear and that in so far as the contractor knew, he was privileged to move in equipment and start work. There is no controversy about the facts under this breach.

2. The second question is whether the prices charged for equipment were fair and reasonable for equipment of this character. The prices of the Associated General Contractors of America are recognized as the general standard.

A report from Frank T. Sheets, Chief Highway Engineer, on September 30, 1932, addressed to the Attorney General, contained the above facts.

A further report was received on March 21, 1933, from Ernst Lieberman, Chief Highway Engineer. This contained copies of "Stipulation of Reasonable Damage." In connection herewith, the items and facts were all carefully checked and it appears that while most of the contract price had been

paid, claimant for its work under the contract, that final payment estimate covering a small sum had not at that time been paid. We have examined blue prints, the abstract of evidence and photostatic copies of the contract, etc., and it appears that the facts herein contained, are substantially correct.

The stipulation of reasonable damages resulted from a close check of all items of the claim by the Division of Highways and resulted from mutual agreement with the department. These amounts are all based on A. G. C. ratings for idle equipment, which seems to be universally recognized as fair and reasonable by contractors and engineers, and this sum was fixed at $3,990.57.

The State is liable for the actual damages arising from unreasonable delay caused solely by the State and not through fault of the contractor, nor attributable to his failure in protecting himself from the effects of delays which might reasonably have been foreseen.

> *Powers-Thompson Const.* vs. *State,* 5 C. C. R. 180.
> *Hoier V. State,* 6 C. C. R. 130.
> *Henkel Constr. Co.* vs. *State,* 6 C. C. R. 222.
> *Carson* vs. *State,* 6 C. C. R. 520.

Where a contract states no time for completion, and the governments improper suspension of the work results in delays, so that the contract could not complete within a reasonable time, such action in effect amounts to a breach of the agreement and the government is liable for the actual damages sustained by the contractor.

> *Smith* vs. *U. S.,* 11 C. Cls. 707; Aff'd., 94 U. S. 214.
> *Rodgers, et al.* vs. *U. S.,* 48 C. Cls. 443.
> *Swift* vs. *U. S.,* 14 C. Cls. 208.
> *Figh* vs. *U. S.,* 8 C. Cls. 319.

The Attorney General has recommended that the claimant be awarded the sum of $3,990.57, in full settlement of all damage. In view of the foregoing authorities and the facts as they appear before us, and the stipulations contained in the record, we award the claimant the sum of $3,990.57 in full settlement of all damages.