(No. 1937— )

THE STRANDBERG BROTHERS COMPANY, A CORPORATION, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 26, 1934.*

RATHJE, WESEMANN, HINCKLEY & BARNARD, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

Claimant filed its declaration in this case on June 29, 1932, averring that on June 20, 1931, the claimant entered into a written contract with the State. The declaration consisted of two counts. They filed a bill of particulars to each count. In the bill of particulars, first count, it is shown that the sum of $27,701.75 is due the claimant, and in the second count it is shown that the sum of $25,893.64 is due the claimant. The contract called for the building of one reinforced concrete girder bridge on State Bond Issue Route No. 54, Section 544-H in Du Page County. The bill avers that shortly after the contract was signed the claimant immediately prepared to assemble its materials for use at the site of the contemplated bridge, and commenced work; that prior to the execution of the contract, June 20, 1931, the State of Illinois did eliminate from the plans and specifications, Sections ten (10) and eleven (11), being approach walls, and did later on, in the month of July, further eliminate Sections seven (7), eight (8) and nine (9) being also approach walls. The declaration admits that such elimination was within the right of the defendant, and that there then remained to be done under said contract the construction of concrete walls, etc. in Sections six (6), five (5), four (4), three (3), two (2) and one (1), also the construction of the north abutment to the bridge span, the construction of the north girder span, the

center girder span and the south girder span and the south abutment to the south girder span and the two piers. It also avers that it was agreed that the construction of said work should begin at the north end of the proposed improvement which was Section six (6), the whole project having been let out in sections, and that a Schedule of Progress was made and that the claimant was by virtue thereof required to organize and collect and concentrate his labor, machinery, materials, etc. so as to follow said plan of construction. There was furnished to claimant the Standard Specifications provided in the contract, the blue print specification of work, and the description of the site.

It is further averred that on July 6, 1931, the claimant was notified that due to right of way difficulties claimant could not proceed to do any work north of a point thirty-three (33) feet north of the center line of Route 4, until further notice; and this point was approximately thirty-three (33) feet north of the center line of the center bridge span in said plans and specifications; that the effect of this direction by the State was to prevent claimant from proceeding with said work from the north end of said work to the south end of the work as was agreed in said contract, and to prevent any work being done by claimant north of the north pier of the center bridge span; that the said right of way difficulties referred to was not and could not be chargeable to claimant. Without claimant's knowledge, the State had failed to secure the right of way from a point approximately thirty-three (33) feet north of the center line of said center bridge span, and by reason thereof had failed to furnish the claimant the site upon which to build the bridge.

Strange as it may seem, the right of way for building this bridge was not secured until October 2, 1931. It, however, appears from the evidence that work progressed steadily right along through, under difficulties, in such a manner to cause the claimant much extra expense. The claimant was required to reverse and change and scatter the order of its work and to begin at the south end of its work and to proceed to do the remainder of the work in piecemeal fashion.

The evidence also shows that bad weather set in and there had been great delays and that the claimant was delayed through no fault of its own and was required to cover

the work with straw, buy fuel, provide salamanders, etc.; that they were also required to keep open Route 4 which passed under the center bridge span, so that the trucks of the Arcola Construction Company, who were doing other work at another place could go through.

Both sides of this controversy seem to have abandoned the original contract in so far as the manner in which the work was to be done and the date of the completion.

It is not denied that the failure to secure the right-of-way did work many hardships upon the claimant, and that the claimant was put to a great extra expense.

It further appears from the evidence that after the work had been constructed it became necessary to condemn a part of the right of way for this improvement. The right of way should have been obtained by the county authorities of Du-Page County, and the State Highway Department had assumed that they had obtained the right-of-way by proper and sufficient deeds. When the judgment in the condemnation proceedings was finally entered, the claimant loaned $3,000.00 to DuPage County to pay this judgment of $3,600.00. The claimant was afterwards reimbursed for this payment. Throughout the entire period that this improvement was under construction, the claimant's conduct has been all that was desired.

The amount set forth in the original contract for the improvement was the sum of $60,969.73. The contract provides that the Standard Specifications for Road and Bridge Construction adopted by the Department of Highways on February 1, 1930 "are all essential and a part hereof". This is a book consisting of 328 pages and a copy was forwarded to claimant. The claimant regularly furnished the State itemized weekly statements of the cost of "all force account work", which included a copy of the weekly payroll and the original receipted bills for the materials used and the freight charges paid on the same. The Standard Specification also provided that all extra work done by force account should be paid as outlined on page 31, in the following manner:

(a) LABOR. For all labor teams, and foreman in direct charge of the specific work, the contractor shall receive the current local rate of wage for each hour that said labor teams, and foreman are actually engaged in such work, to which cost shall be added fifteen (15) per cent of the sum thereof.

He shall also receive the cost of compensation insurance, to which cost no per cent shall be added.

(b) MATERIALS. The contractor shall receive the actual cost of materials, including freight charges as shown by the original receipted bills, to which shall be added fifteen (15) per cent of the sum thereof.

(c) EQUIPMENT. For any machinery, trucks or equipment, including fuel and lubricants, which it may be deemed necessary or desirable to use, the contractor shall receive a reasonable rental price, to be agreed upon in writing before such work is begun, for each hour that said machinery and equipment is in use on such work, to which sum no per cent shall be added.

The compensation as herein provided shall be received by the contractor as payment in full for extra work done by force account and said fifteen (15) per cent shall cover profit, superintendence, general expense, overhead, bond, premiums, and the use of small tools and equipment for which no rental is allowed. The contractor shall, if so requested, present at the end of each day, his cost record to the engineer for examination and comparison.

In this stipulation it is agreed that the total net cost of this improvement was $68,414.46. This included compensation insurance and rentals for equipment used on the job.

Under the Standard Specifications which is a part of the contract no per cent shall be added as profit for compensation insurance, and the same is true on rental of the equipment. The claimant filed an itemized statement of his charges for this job and in accordance with this statement the net cost of this job was $69,689.24. It is admitted that the State has paid to claimant $52,998.39, but the stipulation entered into fixes the total cost at $68,414.46. The itemized statement shows various sums paid for rental equipment, and the dates. There are many items in this itemized statement that are not explained and, therefore, are unintelligible to the court, but it appears that the Highway Department audited this statement, and it appears that there was paid for rental equipment the sum of $6,432.50, and the further sum of $1,667.81 for compensation insurance. Inasmuch as no profit can be received by claimant upon the two last named items, these sums must be deducted from the sum of $68,414.46, the agreed net cost of the job.

The Attorney General very frankly admits that the State should be held liable, but that the measure of damages should be limited to the actual loss arising from and directly attributable to the delay caused by the respondent's failure to furnish the right of way required, in apt time.

The State is liable for the actual damage sustained by a

contractor arising from unreasonable delay caused solely by the State and not through fault of the contractor nor attributable to his failure in protecting himself from the effects of delays which might reasonably have been foreseen.

> *Powers-Thompson Constr. Co.* vs. *State,* 5 C. C. R. 180.
>
> *Hoier* vs. *State,* 6 C. C. R. 130.
>
> *Henkel Constr. Co.* vs. *State,* 6 C. C. R. 222.
>
> *Carson* vs. *State,* 6 C. C. R. 520.

Where a contract states no time for completion, and the government's improper suspension of the work results in delays, so that the contractor could not complete within a-reasonable time, such action in effect amounts to a breach of the agreement and the government is liable for the actual damages sustained by the contractor.

> *Smith* vs. *U. S.,* 11 C. Cls. 707; Aff'd. 94 U. S. 214.
>
> *Rodgers, et al.* vs. *U. S.,* 48 C. Cls. 443.
>
> *Swift* vs. *U. S.,* 14 C. Cls. 208.
>
> *Figh* vs. *U. S.,* S. C. Cls. 319.

It has also been held that where the government delays throw work into the winter months involving the contractor in additional expense, he is entitled to recover the costs of the increased work.

> *O'Sullivan* vs. *U. S.,* 45 C. Cls. 143.

The Standard Specifications above quoted provided for fifteen (15) per cent profit for all labor teams, and foreman in direct charge of the specific work and actually engaged in the work, and a like sum on the actual cost of materials; that upon the equipment the contractor should receive a reasonable rental price but no per cent shall be added.

After deducting the cost of the rental equipment and insurance from the stipulated amount of the net cost of the improvement which was $68,414.46 there is left the sum of $60,314.15. To this, plaintiff is entitled to a 15% profit and this profit must cover all his overhead expenses. Adding 15% allowable, or the sum of $9,047.12, to the said sum of $60,314.15 makes the sum of $69,361.27, plus insurance and rental of $8,100.31, or $77,461.58. Upon this the State has paid the sum of $52,998.39, leaving a balance due the plaintiff of $24,463.19.

Claim is also made for interest. The contract did not provide for the payment of interest, and the evidence fails to show that any claim or demand was made for interest on the sum this court has found to be due; and it further appearing to the court that both sides practically abandoned the original contract. The amount allowed by the court never became an account stated. Therefore, no interest will be allowed.

An appropriation in the sum of Twenty-four Thousand Four Hundred Sixty-three Dollars and Nineteen Cents ($24,463.19) is recommended.