Sooeield, J.,
delivered the opinion of the court:
In 1872 and 1873 the claimant made four several contracts with the government to furnish and prepare the stone for the ■Chicago custom-house. By the first he agreed to furnish all the stone required in the rough. By the second he agreed to ■cut the stone for the basement story, sill, and lintel course. By the third he agreed to furnish mechanics, laborers, tools, shops, and machinery for cuttiug the stone, and cut the same. By the fourth he agreed to furnish labor, tools, and shop, and saw all the stone required to be sawed. All were completed.
In the progress of the work several disputes arose, which are now brought here for adjudication.
The first dispute relates to the price to be paid for sixty-five stones whose dimensions exceed 200 cubic feet each. The facts are presented in finding- VI. The claimant has already been paid at the rate of $1.47J a cubic foot. The contract provides that he shall be paid at that rate for all stones exceeding 150 cubic feet. The claimant insists that he was not bound to furnish stone exceeding 200 cubic ieet, and for such as he did furnish he should receive an advance in the price.
Considering that the cost of getting out and transporting stone of large dimensions increases rapidly as the size increases, it would seem unreasonable that there should be no limit to the size that might be demanded for the same price. Without a limit, claimant might be required to furnish stone containing 300 or 400 cubic feet, or as large as an ambitious architect might propose. The advertisement states ‘‘ the size of the stones cannot now be given; the largest stones will not probably contain over 200 cubic feet.” Claimant’s proposal, in reply, was to the effect *590 that lie would “furnish the stones containing from 150 to 200 cubic feet at $1.47£, and 25 cents extra per cubic foot for all blocks containing more than 200 cubic feet.” The letter of acceptance says “$1.47J per foot for all stones whose schedule dimensions exceed 150 and do not exceed 200 feet.” If the advertisement, proposal, and letter of acceptance can be t.iken, it is quite evident that at least $1.72J was to be paid for these large stones.
By the common-law rule all prior understandings are merged in the final contract. That rule cannot be so strictly applied to government contracts, because they are required to be made by advertisements, bids, and acceptances. If this rule were to be strictly applied to such contracts, the agents of the government, having gone through the formality of advertising, could make important changes without submitting them to the publicity and competition required by law. In Harvey v. United States (105 U. S., 688-’89) the Supreme Court said :
“The written bid, in connection with the advertisement and acceptance of that bid, constituted the contract between the parties so far as regards the question whether the contract prices embraced the coffer dam work. (Garfielde v. United States, 93 U. S., 242; Equitable Insurance Co. v. Hearne, 20 Wall., 496.) The written contract, in that respect, was intended by both parties to be merely a reduction to form of the statement as to work and prices contained in the bid. If the formal contract is susceptible of a different construction, to the prejudice of the contractors, it is very plain that >uot only the contractors but the officers of the government were uuder a mistake.”
For the reason above stated, and under this ruling of the Supreme Court, we frel authorized, in order to ascertain the intention of the parties, to examine, in connection with the contract, the advertisement, proposals, and acceptance. From all these papers combined we derive the conclusions that it was the intention of both parties that all stone exceeding 200 cubic feet should be paid for at the rate of $1.72¿- a cubic foot. Of the sixty-five large stones sixteen were above 200 feet by quarry dimension, and below it by schedule dimension. By the contract the divisions by sizes were to be made according to schedule dimension. The sixteen stones must therefore be classed with those below 200 feet. With this view of the law, the claimant is entitled to recover $2,758.25 for the forty-nine stones, in addition to the amount already paid him.
*591 A second dispute grows out of the facts presented in finding VII. In the several partial settlements with the claimant the defendants made deductions in his pay, from time to time, for broken, discolored, and imperfect stones, amounting in all to $6,062.92. The only question was as to whose fault occasioned the loss. Each party now attributes it to the other. We do not enter upon this inquiry because the parties appear to have considered and settled it for themselves at the time. The deductions claimed or agreed upon were put in the several pay-bills, and the claimant receipted them in full. These settlements should not be disturbed unless it appears that the parties made mistakes in fact, which is not shown.
A third dispute grows out of the facts stated in finding VIII.
During the progress of the work it came to be apprehended that a bad site had been selected, and that this kind of stone was unfit for such a building. About the middle of May, 1875, the work was stopped and an investigation made. About the middle of October following the work was resumed.
In the autumn of 1877 the work was'again suspended for the same reason, and resumed about • the middle of February following.
The court has found that'these delays resulted in a loss to the claimant of $20,000.
It is said that the defendants had a right under the several contracts to demand these interruptions. The clauses relied upon to sustain the position are taken from thte first’and third contracts presented in findings I and III respectively. In the first contract claimant agrees after the first 100,000 feet are delivered, “to furnish and deliver the remainder at such times and in such quantities as may be required by the defendants or their duly authorized agent.” In his third contract he agrees “to furnish such number of mechanics and laborers as maybe required from time to time” by the defendants and “to cut such stone in such manner and at such place as may be required by the defendants.” This word “required” in- similar connection occurs very often in government contracts. This court has had frequent occasion to pass upon its force and meaning. In some cases it has been held to relate to the wants of the service; in others to the unsettled purpose of the government. In this case we think it should have the former construction. In *592 the erection of so large a building there must necessarily be occasional delays. One part must often await the progress of other parts. Unavoidable accidents will often for short periods of time delay the whole. Such delays would doubtless be protected by the quoted language of the contracts. In this case the delay was caused by a contemplated change of purpose. It was supposed that a bad site had been selected, and that the sandstone was not sufficiently ornamental or substantial for such a building. While the defendants deliberated the whole work was stopped. If this language would justify a delay of ten months for such a purpose, while the claimant waited with his labor, machinery, and capital, it would also justify a much longer delay, even to the practical abandonment of the work. (Figh’s Case, 8 C. Cls. R., 319; United States v. Smith, 94 U. S., 214.)
We think the claimant is entitled to his reasonable damages which is found to be $20,000.
The claimant alleges that a large amount of stone furnished by him and used in the building has not been paid for. The facts ,as stated in finding IX do not sustain this item of his claim. . •
Upon the facts presented in finding X the claimant demands a large amount of prospective profits. He had a right under his contract to furnish all the sandstone required for the building. The government determined to use a harder and more enduring material for the approaches to the building, and contracted with other parties to furnish granite. In this there was no violation of the contract.
Some other claims are set forth in the petition, but they were abandoned upon the trial.
Judgment will be entered in favor of the claimant for the sum of $22,758.25.