## W. Boyce et al. v. R. L. Stringfellow et al.

### Decided December 5, 1908.

**1.—Contract—Railroad Right-of-Way—Contribution—Pleading.**

In a suit for contribution between subscribers and obligors upon a contract to furnish a right-of-way and terminal facilities for a railroad company, petition and the contract upon which the suit was based, considered, and the petition held not subject to exception on the ground that it failed to allege that the railroad had been built to the town in question before the payments were made by the plaintiffs to which contribution was demanded of the defendants; that so far as the rights of the parties were concerned it was a matter of no consequence under the stipulation of the contract whether the road was ever built. Defendants were bound in equity to pay their proportion of the expenditures by plaintiffs.

**2.—Same—Definition of "Required."**

A contract to furnish the right-of-way and terminal facilities for a railroad company in a certain town contained a provision that the obligors would "give the company whatever right-of-way, depot ground and lands for railroad purposes which it may require" at the town in question. Held, because the contract as a whole evidenced that the object to be attained was the construction of the railroad so as to form a connection with two other railroads named in the contract, all that the railroad company could legally "require" of the obligors was such right-of-way as was reasonably necessary to accomplish that purpose, and those obligors who, at the request of the company, expended money in securing a right-of-way beyond said connection could not demand contribution therefor from the other obligors.

**3.—Same—Contribution—Voluntary Payment.**

The fact that certain obligors had voluntarily contributed more than they were legally bound to contribute under the terms of a contract to furnish a right-of-way to a railroad company, was no reason why the other obligors should not pay their proportion of the amount for which they were legally bound.

Appeal from the District Court of Potter County. Tried below before Hon. J. N. Browning.

*John W. Veale, J. W. Crudgington* and *Turner & Boyce,* for appellants.—Plaintiffs' petition does not show that the expenditure of the money for which they seek contribution was compulsory, in that it is not alleged that said Francis I. Gowen or his assigns had in any respect complied with their agreement so as to be in position to enforce performance of said contract against the other parties. 7 Am. Eng. Enc. of Law, p. 336; 9 Cyc., p. 798.

If the railroad company had breached the contract by failing to build its road to Amarillo within the time provided for by such contract, the other parties to the contract were thereby discharged and the expenditure by plaintiffs of the money for the right of way

thereafter was not compulsory and they could not recover contribution for such expenditures, and the court erred in refusing to submit this issue to the jury at defendants' request. Garrison v. Cook, 96 Texas, 228; Bes Line Construction Co. v. Wood, 37 Texas Civ. App., 414.

Under a proper construction of the contract sued upon these defendants were only bound to furnish the railroad company such right of way and grounds for terminal facilities at Amarillo as it might reasonably require for the purpose of enabling it to carry out its agreement to build to Amarillo to a connection at said place with the Pecos Valley lines and the line of the Fort Worth & Denver City Railway Company, and were not bound to furnish any right of way that the railroad company might arbitrarily require for other purposes. Coe v. Aiken, 61 Fed., 24, 35; Whitehouse v. Liverpool New Gaslight & Coke Co., 5 Man. G. & S., 798, 806; McKeever v. Cannonsburg Iron Co., 16 Atl., 97, 98, 138 Pa., 184; Hull v. Holloway, 20 Atl., 445, 447, 58 Conn., 210; Flint & P. M. R. Co. v. Detroit & B. C. R. Co., 31 N. W., 281, 285, 64 Mich., 350; Corlies v. Allen, 36 N. J. Eq. (9 Stew.), 100, 101; Mueller v. United States (U. S.), 19 Ct. Cl., 581, 591. For collection of authorities on subject, see Words & Phrases, vol. 7, pp. 6124 and 6125.

*C. B. Reeder* and *H. H. Cooper,* for appellees.—The appellants can not complain at the voluntary contribution of their co-guarantors, who contributed to the full seven thousand dollar liability. Jackson v. Murray, 77 Texas, 644; Moore v. Hanscom, 103 S. W., 665-67; Faires v. Cockerell, 88 Texas, 428.

CONNER, CHIEF JUSTICE.—Appellants and appellees were subscribers and obligors upon an agreement to secure the right of way, depot ground and ground for other terminal facilities at Amarillo, Texas, for the Choctaw, Oklahoma & Gulf Railway Company, which, in consideration thereof, agreed to extend its line of railway from Weatherford, Oklahoma, to a connection with the Pecos & Northern Texas, and the Fort Worth & Denver City lines of railway at Amarillo. Appellees, who were plaintiffs below, expended several thousand dollars in fulfillment of the agreement, to which appellants declined to contribute, and this suit was brought to enforce contribution. The case was submitted on special issues, and upon the answers of the jury thereto judgment was rendered in favor of the plaintiffs and against each of sixteen defendants for one hundred and thirteen dollars and sixty-four cents, with six percent interest thereon from August 10, 1903. The judgment also disposed of several defendants against whom the suit had been dismissed, and of one in whose favor the jury found on the issue of whether or not he had signed the agreement. The findings of the jury are not questioned and the appeal is submitted here upon such findings and the undisputed evidence.

Appellants, who are the defendants below, against whom the judgment was rendered, first assign error to the court's action in overruling a general demurrer to the plaintiff's petition, and in sustain-

ing a special exception to one of the paragraphs in the answer. The petition, which is voluminous, failed to allege that the Chocktaw, Oklahoma & Gulf Railway had, at and before the payments for right of way, etc., extended its line to Amarillo, and the clause of the answer to which the exception related averred specially that it had not been done within the time agreed upon. The contract, which is also lengthy, provided that upon its execution the promoter, F. I. Gowen, would "as speedily as possible and with all reasonable dispatch and haste, proceed to cause to be created under the laws of the State of Texas, a Texas corporation for the purpose of building, and that said corporation will build a line of railroad . . . to Amarillo . . . where said line will connect with said railroads" (the Pecos & Northern Texas and Fort Worth & Denver City Railways). No special time is designated in the contract for either the formation of the Texas corporation or the completion of the proposed railway. All that can be said of it is that it at most required but a reasonable time for fulfillment. The pleadings and undisputed proof show that the railway was completed to its intended connection, although there appears to have been a delay, from some unexplained cause, of from six to twelve months at the Texas State line. Such delay, however, does not appear to be material to the rights of the parties herein. Time was not made of the essence of the contract, as in the cases of Garrison v. Cook, 96 Texas, 228, and Bes Line Const. Co. v. Woods, 37 Texas Civ. App., 414, cited by appellants, and the contract itself contemplated that the procurement of right of way, etc., should at once begin in advance of construction and provided the remedy for a failure in construction. We quote from the contract as follows:

"Parties of the second part (parties to this suit), in consideration of such undertakings, and of the building of such road by party of the first part and his associates; and in consideration of the benefits to be derived therefrom, and the benefit to said town of Amarillo, agree that they shall and will forthwith proceed to procure and convey to such corporation as soon as incorporated and with all reasonable dispatch and so as not to delay such corporation in such extension of its said line of railway, the right of way, terminal and depot grounds of the dimensions and specifications indicated in said written proposition from said general solicitor as shown by copy thereof as hereto attached, as aforesaid.

"That said parties of the second part contract and agree to so procure said right of way, depot and terminal grounds at their own expense and cost, and without any expense or cost to the party of the first part or of such corporation to be organized by said party of the first part; and in the event parties of the second part fail to procure said right of way, such corporation after it is organized, or party of the first part in its name, shall have the right to proceed and condemn or purchase such parts of the right of way as may not be so secured by the parties of the second part, within a reasonable time and such time as will not necessarily delay the building of such road, and all reasonable expense so incurred by the party of the first part or such corporation in so securing such parts or parcels

of such right of way, shall be charged to and paid by parties of the second part to the party of the first part or his successors or assigns.

"That in the event party of the first part should fail to organize such railroad corporation and construct said railroad ·as herein contemplated, then he shall be responsible to the parties of the second part for all sums of money and for all labor reasonably incurred and expended in their efforts to secure such right of way.

"It is specially understood and agreed that the said Francis I. Gowen, as party of the first part, is making this contract for the benefit of such Texas corporation as may be incorporated by him and his associates; and that upon the making and perfecting of such incorporation he may assign this contract to it, and such corporation may accept the same, and upon such acceptance the said Texas corporation will become substituted for party of the first part herein with like force and effect as if it had been previously incorporated and entered into this contract in the first instance."

It thus appears that so far as the rights of the parties to this suit are involved, it is a matter of no consequence whether the road was ever completed. This suit was not by or against the railway company upon the contract for construction, but an equitable one for contribution, and if the plaintiffs in good faith expended moneys, as alleged, in the acquisition of necessary right of way and depot grounds, as all had obligated themselves to do, defendants were bound, not by the express terms of the contract, but upon principles of equity, to pay their just proportion thereof, regardless of controversies that might arise between the subscribers to the contract and the railway company. All assignments, therefore, dependent upon the contentions here discussed are overruled.

The twelfth assignment, however, we think ˙must be sustained. The special findings show that of the five thousand dollars expended by the plaintiffs only the sum of sixteen hundred and fifty-five dollars and eighty-two cents was expended for right of way, etc., to a connection with the Pecos Valley and the Fort Worth & Denver City Railway lines at Amarillo, it appearing that the ·remainder had been paid for right of way through Amarillo beyond the necessary connection for a contemplated extension of the Choctaw, Oklahoma & Gulf Railway westward to a point in New Mexico. We think the finding of the jury on this issue is clearly in accord with the proper construction of the contract on this point. While in the letter or proposition of the general solicitor of the Chocktaw, Oklahoma & Gulf Railway Company made part of the contract, there is a general provision to "give the company whatever right of way, depot ground and lands for railroad purposes which it may require at Amarillo," and while it further appears that the plaintiffs expended five thousand dollars or more for right of way through the city for its westward extension at the request of the company, yet the contract as a whole evidences that the end in view—the object to be attained—was a construction of the railway so as to form a connection with the other two railways named in the contract, and all that the company could legally "require" of the right of way committee or subscribers was such right of way, depot grounds, etc., as were reason-

ably necessary to accomplish the end in view, to wit, a connection with the Pecos Valley, Oklahoma & Gulf and the Fort Worth & Denver City Railways. Any other construction of the contract would be unreasonable. The following authorities illustrate the scope of the term as we think it should be here applied: "'Require' means to make necessary, . . . to ask as of right." Mattingly's Heirs v. Read, 79 Am. Dec., 565. "'Required,' as contained in an agreement whereby the plaintiffs engaged during a period of three years to supply the defendants, a gas company incorporated by Act of Parliament, with such quantities of pipes as should from time to time during the said period be 'required' by the defendants, means that the plaintiff was bound to supply all such pipes as the company might reasonably require for such works as they were actually carrying on under the authority of their incorporation, and not such pipes as the company might think fit to order. Whitehouse v. Liverpool New Gaslight & Coke Co., 5 Man. G. & S., 798, 806. Where defendants agreed to purchase from plaintiffs as much coal as they should 'require for their mill,' and by the contract plaintiffs were not to be liable for failure to furnish coal where they were prevented by unavoidable causes, and defendants were not to be compelled to accept the coal when their works should be out of operation, the word 're-quire,' as used in the contract, imports so much as is necessary for consumption in their business, and no more. McKeever v. Cannonsburg Iron Company, 16 Atl., 97, 98, 138 Pa., 184. 'Required,' as used in a contract with the federal government to deliver stone at such times and in such quantities as may be required by the government, should be construed to refer to the wants of the service, and not to an unsettled purpose of the government; and hence, if the government caused delay by a change of plans, the contractor may recover damages. Mueller v. United States (U. S.), 19 Ct. Cl., 581, 591."

In addition to what we have said as to the proper construction of the contract, the jury found in answer to the eighth special issue that: "All the right of way west of Taylor Street was only required for a western extension, and the amount of $5000 less cost of lots designated in answer to the sixth issue, and the cost of right of way across the J. B. Kerr section ($1655.82) was paid for such right of way not necessary for right of way into Amarillo." This finding, unassailed by any assignment of error as it is, seems to be conclusive here against any contention that the subscribers to the contract were bound to furnish all right of way that might be required for the fulfillment of the ultimate purposes of the railway company merely because of its request therefor. It follows that the forty-three subscribers to the right of way obligation were only bound for their pro rata of the sixteen hundred and fifty-five dollars and eighty-two cents, and not of the five thousand dollars as adjudged by the court.

Appellants insist, however, that even though the view expressed should be adopted, they should be entirely relieved because of the fact otherwise established by the record that seventeen of the subscribers to the contract not made parties to the suit have paid plaintiffs in contribution the sum of twenty-nine hundred and sixty-eight

dollars and twenty cents. But we do not think such voluntary contributions to the whole amount expended should relieve appellants from their just proportion of the said sum necessarily expended under the obligation executed by them. There is nothing to show that such voluntary payments were to be applied to the unpaid sum necessarily expended, and appellants have no legal ground of complaint because their co-obligors chose to contribute to the full sum in good faith expended in the real or supposed interest of the city, and in supposed compliance with the contract. See Jackson v. Murray, 77 Texas, 644; Moore v. Hanscom, 103 S. W., 665-673; Faires v. Cockerell, 88 Texas, 428 (28 L. R. A., 528).

We conclude that the judgment should be reformed and affirmed in appellees' favor for one forty-third of said sum of sixteen hundred and fifty-five dollars and eighty-two cents against each of the appellants, together with interest thereon from August 10, 1903, at the rate of six percent per annum, and that appellees pay all costs of appeal.

*Reformed and affirmed.*