**QUANAH, A. & P. RY. CO. v. COOPER et al.**
**(No. 1865.)**

(Court of Civil Appeals of Texas. Amarillo.
Dec. 21, 1921. Rehearing Denied
Feb. 1, 1922.)

1. Evidence ⬅➡461(1)—Parol evidence held admissible to show intention of parties to contract; "through;" "across."

Under a contract to procure a right of way for a railroad line "as herein provided, through and across" a county, in consideration of the railroad company's agreement to construct a line to a station on a certain section thereof, parol evidence was admissible to show the parties' intention as to whether "as herein provided" referred to a line "through and across" the entire county, or to the character of the right of way to be provided to such station; the words "through" and "across" frequently meaning simply "within."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Across; Through.]

2. Appeal and error ⬅➡931(1)—Disputed issues assumed found in favor of successful party.

Where, in a trial to the court, the evidence was conflicting, the appellate court will assume that that court found the disputed issues in favor of party for whom judgment is rendered.

On Motion for Rehearing.

3. Appeal and error ⬅➡842(1)—Where evidence conflicting as to practical construction of contract, issue is one of fact.

Where the evidence was conflicting as to acts relied on as a practical construction of a contract, the issue was one of fact for the trial court.

4. Appeal and error ⬅➡204(3)—No fundamental error in considering meaning of ambiguous contract.

Where no objection was made to the introduction of evidence as to the meaning of an ambiguous contract, because such ambiguity was not pleaded, the case was tried on the theory that defendants, under their general denial, could show that the facts relied on by plaintiff imposed no liability under the contract, and the judgment on its face was consistent with the pleading, there was no fundamental error in considering the question of ambiguity.

Hall, J., dissenting.

Appeal from District Court, Hardeman County; J. A. Nabers, Judge.

Action by the Quanah, Acme & Pacific Railway Company against A. J. Cooper and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Jno. P. Marrs, of Wichita Falls, for appellant.

Bouldin & Surles, of Mineral Wells, for appellees.

BOYCE, J. The Quanah, Acme & Pacific Railway Company sued A. J. Cooper and others on a contract whereby the defendants, called subscribers, undertook to pay the railway company a bonus and secure certain right of way for its line of road. It was alleged that the subscribers had failed to secure right of way through two tracts of land included within the terms of the contract, and the railway company brought the suit to recover the amounts which it had paid in securing such right of way. A trial before the judge resulted in judgment for the defendants, and the plaintiff appeals.

The contract referred to was in writing, dated July 15, 1912, and the provisions thereof material to this decision are as follows:

"First. The company, for and in consideration that the several persons who have promised to pay to said railway company the several sums of money evidenced by several promissory notes, bearing even date and aggregating the sum of $15,000, shall comply with and pay said sums according to said several contracts, and the further consideration that the subscribers shall immediately procure free of cost to railway company right of way for its line as herein provided, through and across Motley county; the company promises and agrees that it will on or before September 1, 1913, construct a line of standard gauge steam railway from its terminus in Paducah, Cottle county, to a station on section 29, H. & G. N. Ry. Co. surveys in Motley county, Texas.

"Second. Subscribers promise and agree to procure deeds in fee simple from all landowners, excepting E. P. and S. A. Swenson and the Matador Land & Cattle Company, to right of way extending on either side, not less than 50 nor more than 100 feet from the center of the line to be selected by railway company. The 200 feet right of way to be obtained at such place as the engineer of company shall deem necessary for the proper construction of the railway track. Subscribers promise to furnish with deeds to such right of way an abstract of title to same showing good and sufficient title vested in the company.

"Third. In the event subscribers are unable to agree with owners of the land as to the price to be paid for such right of way, and the general attorney of the railway is of the opinion that owners of the land are demanding a greater sum than is reasonable, then railway company agrees that it will exercise its right of eminent domain, and condemn such right of way, and prosecute such suit to such extent as the general attorney of railway company deems profitable to railway company and subscribers: Provided, always, the judgment of the court, as well as all costs thereof, excepting attorney's fees, shall be paid by subscribers."

The railway company built its road within the prescribed time to the station on section 29, and the town located there was called Roaring Springs. It did not stop on section 29, however, but built the road on to McBain, 3½ miles beyond Roaring Springs.

McBain was also in Motley county, and was itself several miles distant from the county line. The subscribers did not secure for the railway company right of way through two tracts of land over which it thus built. One tract is called the Collett tract, and the other the Hale tract. The railway company secured the right of way over said tracts at a cost of $1,737.63 for the right of way over the Collett tract and $105 for that over the Hale tract. A decision of the right to recover on the two separate claims calls for a conclusion as to different contentions in the application of the contract to different facts, and we will consider them from now on separately, taking up first the issues as to the Collett tract.

The Collett tract of land was between Roaring Springs and McBain, and the subscribers contended that they were not bound by the contract to secure the right of way beyond section 29. The railway company contended that the contract bound the subscribers to secure the right of way through, meaning thereby from side to side, of Motley county. The contract was drawn by the general attorney for the railway company, and he, in behalf of the railway company, conducted the negotiations leading up to its execution. Evidence was offered to the effect that in such negotiations nothing was said about building the road beyond Roaring Springs; that said attorney had a meeting with the interested parties, and stated in a speech at such meeting that "the purpose of the meeting was getting a bonus of $15,000 to build that road from Paducah to section 29 in Motley county"; that the parties were asked to meet such attorney and railway officials "to discuss building a railroad from Paducah to section 29 in Motley county"; that in such meeting "there was something said about how far they were going to build the road—to section 29. Nobody at that meeting said anything about extending it on through Motley county. It was the understanding that the road would be built to section 29, so as to put the town site on that section." The trial judge made this finding of fact:

"I find that at the time the contract dated July 15, 1912, was entered into nothing was said by any of the parties about the said railway being built any further than section 29, nor was it contemplated by the subscribers that said road should be built any further, nor did they know that it would be built further, until some time in 1913, and that said extension beyond said section 29 was not a matter in contemplation of the said subscribers at the time said contract was made, nor did they ever agree to secure any right of way for said company free of charge west of said section 29."

The judge concluded as a matter of law:

"That the expression 'through and across Motley county,' taken in connection with the balance of said contract, is ambiguous in this: That it may mean (a) entirely across Motley county; (b) across that part of it that said railway company shall build on; or (c) that part of it then contracted to be built; that is to say, a line of railway extending from Paducah to said section 29. Therefore the testimony of defendant's witnesses, showing what was in contemplation of the parties at the time and all the facts and circumstances showing what was intended, is admissible to show, in connection with the other words used in said contract in that connection, what was the intention of the parties on which their minds met, I further find that, said contract having been prepared by plaintiff's agent for them, that fact should be considered. I therefore conclude that the contract contemplated the building of a railroad to section 29, and that the words 'through and across Motley county' meant through and across all that part of Motley county through which the road contracted for, to wit, a railway from Paducah to section 29, would run."

[1] We do not think there was any error in the admission of the oral testimony referred to or in the construction placed by the court on the contract. In the case of Provident Life & Trust Co. v. Mercer, 170 U. S. 602, 18 Sup. Ct. 792, 42 L. Ed. 1160, it is said:

"It is true the primary meaning of the word 'through' is from end to end, or from side to side; but it is used in a narrower and different sense. Its meaning is often qualified by the context. Thus, if one should say that he had spent the summer traveling through New England it would not be understood as carrying an affirmation that he had been from one side clear to the other, or from one end clear to the other, but that his travels had been within the limits of New England. That book which is said to have a wider circulation than any except the Bible, Bunyan's Pilgrim's Progress, opens with this sentence: 'As I walked through the wilderness of this world, I lighted on a certain place where there was a den, and laid me down in that place to sleep.' Does the writer mean that he passed from one end of the wilderness to the other, and at the further end found the den, or simply that as he traveled in the wilderness he lighted on the den? Obviously the latter. Many similar illustrations might be cited. They show that 'through' does not always mean from end to end, or from side to side, but frequently means simply 'within.'"

We apprehend that the same observations might be made as to the word "across." Does the context qualify the primary meaning of the words "through and across," as used in this contract? There is a qualifying clause in the same sentence—the subscribers contract to procure "right of way for its line *as herein provided*, through and across Motley county." Does the clause "as herein provided" refer to the "line of railway through and across Motley county," or does it refer to the character of the right of way to be provided, and thus relate to the second subdivision of the contract?

"The strict rule of grammar would probably require that the qualifying clause in the sentence should be held to modify the nearest word to which it is applicable in the context." Lemp v. Armengol, 86 Tex. 692, 26 S. W. 942.

So, by a strict grammatical construction the clause would perhaps be taken as referring to the line of road for which right of way was to be procured. As the contract only provides for a line of road from Paducah, in Cottle county, to section 29 in Motley county, its meaning if this clause is to have the relation indicated, would require the subscribers to furnish the right of way through and across Motley county to section 29, and no violence would be done to the plain meaning of any of the words of the contract by such a construction.

"But constructions based upon grammatical niceties are not favored, even in interpreting Constitutions and statutes, which are presumed to be drawn with creat solemnity and care. In commercial contracts they are entitled to still less favor. It is doubtful if a rule of syntax in reference to the position of words or clauses in a sentence ought ever to have a controlling effect, save as a last resort." Lemp v. Armengol, supra.

The court, in that case, was construing the contract, in which the meaning depended on a determination of the relation of a qualifying clause, and in view of the uncertainty as to such matter it was held that—

"It is a case, therefore, in which it was proper to resort to parol evidence for the construction of the instrument."

In this case, in addition to any question as to the meaning of the contract raised by the use of the clause we have discussed, we think that other parts of the contract also indicate that the words "through and across Motley county" were used in a qualified sense. The subject-matter of the contract, its end and purpose, as disclosed by the contract itself, was the building of a railroad from Paducah to a station on section 29 in Motley county and this fact should be taken into consideration in the construction of the contract.

"The intention of the parties is to be ascertained from the words employed, the connection in which they are used, and the subject-matter in reference to which the parties are contracting." 6 R. C. L. 837; Boyce v. Stringfellow, 52 Tex. Civ. App. 504, 114 S. W. 652; Armstrong v. National Life Insurance Co., 112 S. W. 328(8); Page on Contracts, § 2025; 3 C. J. 542.

If the contract did not of itself require the construction placed upon it by the trial court, the language is at least sufficient to create a doubt as to what was the intention of the parties, and thus authorize the introduction of parol evidence for the purpose of showing the surrounding circumstances, and what was in contemplation of the parties at the time.

[2] The Hale tract of land is in Motley county, between Paducah and Roaring Springs. The evidence shows that the railway company furnished the subscribers with a list of lands with the names of the owners over which the right of way was required, accompanying this with a statement of the extent of the right of way as required by the railway engineer. There is evidence to the effect, though this is not free from conflict, that the Hale tract of land was not on this list, and no request was ever made of the subscribers to secure the right of way over this land, and that the railway company, without any preliminary notice or demand upon the subscribers in reference to this land, voluntarily paid the owner, Mrs. Hale, $105 for a 200-foot right of way across it. It is conceded that the evidence does not show that the subscribers were requested to pay the $105 before it was paid to Mrs. Hale by the railway company. The amount paid for the right of way was reasonable. There is no express finding by the trial court as to whether the subscribers were requested or notified to secure any right of way over this land. The finding of fact made by the trial court on this issue is as follows:

"Defendants not having secured the right of way through Mrs. Hale's land, plaintiff company voluntarily, without any request from the defendants, paid Mrs. Hale $105 for said right of way, which is shown by the evidence to have been a reasonable sum."

The conclusion of law announced by the trial court was as follows:

"I find that, the payment of $105 by the railway company to Mrs. Hale being purely a voluntary one on the part of said company, and not made at the request of said defendants, or either of them, defendants are not liable therefor, and that said company is not entitled to recover anything in that respect."

We think the contract contemplated that the railway company would notify the subscribers as to the location of its line of road and extent of the right of way required. This was in fact the way the matter was handled, except as to the Hale tract. The subscribers had the right themselves to conduct the negotiations for the procurement of the right of way from the owners of the land, and the railway company did not have the right, without any preliminary notice of its requirements as to right of way over a particular tract of land, to deprive the subscribers of this right by voluntarily conducting such negotiations itself. If this is what it did in this case, it cannot recover the $105 paid to Mrs. Hale; it assumed the responsibility of this action, taken at a time when it was not proper for it to act. But if it did

request the subscribers to procure the right of way, as the witness for the appellant testifies, the subsequent action of the railway company in procuring the right of way was thus made necessary by the subscribers' default, and the payment of $105 to procure the right of way would not have been voluntary, in the sense that it would have precluded the railway company from recovering such amount so paid. No request for a more specific finding of fact was made, and in support of the judgment we must assume that the court decided the conflict in the evidence referred to in favor of the defendant, and we therefore sustain the judgment as to this claim.

The judgment of the trial court will therefore be affirmed.

HALL, J. (dissenting). I cannot agree with the majority in the holding that the contract is in any sense ambiguous. If there is no ambiguity, then the trial court erred in admitting the evidence complained of.

"When the language implied is unequivocal there is no room for construction." 22 C. J. 1177; 4 Page on the Law of Contracts, §§ 2023, 2060.

"Where there are not technical words used, the language of the instrument must be interpreted in accordance with the usual and ordinary meaning of the words contained in it." 2 Elliott on Contracts, §§ 1506–1509; 4 Page on the Law of Contracts, § 2024; 22 C. J. 1202; 13 C. J. 531.

Considering the contract as a whole, in the light of the foregoing rules, I think its meaning is clear, and that it (1) in simple language obligates the subscribers to immediately procure, free of cost to the railway company, entirely through and across Motley county, a right of way not less than 100 nor more than 200 feet wide, and to procure deeds therefor, except as to the Swenson and Matador lands; and (2) in consideration of such services the railway company is obligated to construct, on or before September 1, 1913, a line of standard gauge steam railway from its terminus in Paducah to a station on section 29, in Motley county; and (3) the subscribers were obligated to reimburse the company when it was forced to condemn the land by reason of the subscribers' failure to agree with the landowner upon its value.

There being no ambiguity in the contract, according to my view, the trial court erred in admitting the evidence complained of, the effect of which is not to explain, but to contradict and vary, the writing. I think paragraph first binds the subscribers to secure the right of way clear across Motley county in width, as provided in the second paragraph, and that the effect of the admitted evidence is to show that their obligation was to secure such right of way only to some place not designated in section 29. The witnesses were permitted to testify as to the idea they had of the matter, but under the well-established rule of law it is not the actual secret intention of the parties, or either of them, which the court is to ascertain, but it is the intention which the law attaches to the words which they have used, unless, of course, there is an allegation of fraud or mistake, which we do not find in this case. Ill. Cent. Ry. v. Vaughn (Ky.) 111 S. W. 707; Comptograph Co. v. Burroughs Adding Machine Co., 179 Iowa, 83, 159 N. W. 465; N. W. Oil & Gas Co. v. Branine, 175 Pac. 533, 3 A. L. R. 344; 6 R. C. L. 835, § 225; 4 Page on the Law of Contracts, § 2023; 22 C. J. 1178, 1179, §§ 1570, 1571; 13 C. J. 523, 525.

If the contract stipulated that the subscribers were to procure right of way "through" Motley county (omitting the word "across"), and bound the company to build only to section 29, still the Mercer County Case, cited by the majority, is not authority here. In that case the Supreme Court of the United States was influenced largely in the interpretation of the word "through," as used in the act under consideration, by the further fact that the negotiable bonds had passed into the hands of a bona fide holder, and further the word "across" was not used by the Legislature in the act construed. Admitting that the word "through" may be limited in its meaning and by the context, yet when it is supplemented by the word "across," and these words have no technical meaning, I think there is no room for construction. "Across" primarily means "from side to side;" "from one side to another;" "quite over." Webster's Dictionary; Century Dictionary; Ill. Central Ry. Co. v. Chicago, 141 Ill. 586, 30 N. E. 1044, 17 L. R. A. 530; Crowley v. Chicago, etc., Ry., 122 Wis. 287, 99 N. W. 1016.

The rules with reference to grammatical construction and punctuation are clearly stated in 13 C. J. 534 and 535, as follows:

"The grammatical construction of a contract will not be followed, if a different construction will better give effect to the intention of the parties, as shown by the whole instrument and accomplish the object for which the contract was executed."

"The punctuation of a document, although it may aid in determining the meaning, will not utterly control or change a meaning which is plain from a consideration of the whole document and the circumstances, nor can punctuation marks be allowed to give the contract an unconscionable and inequitable meaning. In order to give effect to the intent of the parties it has been held that the court may employ proper punctuation marks in reading the contract."

The rule that a contract should be construed as a whole is cardinal, and as supplementary to this rule is the further prin-

ciple that a contract should be so construed, if possible, as to give effect to all its parts and avoid inconsistencies and contradictions. 6 R. C. L. 227; 13 C. J. 525–527. If the words "as herein provided" are made to qualify "line," instead of "right of way," then there arises a doubt whether subscribers are bound to procure right of way to section 29, or entirely through and across the county; but if these words are made to qualify right of way, and to refer to specifications of the right of way, as set out in paragraph 2, there is no repugnancy or conflict in the contract as a whole, and effect can be given to every word in it, used in its popular and ordinary meaning. Construed otherwise, the words "through" and "across" must be eliminated or accepted in a qualified and unusual sense. According to my interpretation the subscribers wanted the road built to section 29. The company was willing to do this if the subscribers would procure a right of way through and across the county. The fact that the road was built 3½ miles beyond section 29 is sufficient to show that the company did not intend to end its line on that section. Its charter called for 40 miles of road. There is nothing in the contract requiring the company to furnish the subscribers a list of landowners over whose property the line was surveyed. A fair construction of it would require them to take notice of that fact.

For the reasons stated, I respectfully dissent.

### On Motion for Rehearing.

BOYCE, J. [3] It is urged in the motion for rehearing that the parties to the contract in question, by their actions, put a practical construction on it which is in accordance with that now insisted upon by appellants, and should be bound by such practical construction acted upon by the parties. We doubt whether the assignments presented entitle appellant to make this contention, as these assignments complain of error as to the admission of parol evidence, and the construction of the contract by the court, on the ground that the language of the contract itself is plain and unambiguous, and the assignments contain no reference to evidence as to practical construction put upon it by the acts of the parties. However, we have examined the record, and find that the evidence of the witness Decker, as to acts done by the parties as practically construing the contract in support of appellant's position, is contradicted by the evidence of the witnesses Chalk and Luckett, and any issue as to practical construction of the parties would have become one of fact. The record presents the same conflict of evidence as to notice to the defendants of the requirements of the railway company as to right of way across the Hale tract of land.

[4] On oral argument of the motion for rehearing it was suggested that there was fundamental error in considering any question of ambiguity in the contract, because there was no pleading by the defendants of such ambiguity. If there is any ambiguity in the contract, it is apparent on its face. The plaintiff had the burden of bringing the facts relied upon by it for recovery within the terms of the contract, and we doubt whether it would have been necessary for the defendant to have specially pleaded the ambiguity under such circumstances. 13 C. J. p. 716, and authorities. What was said by the court in the case of Morgan v. Turner, 4 Tex. Civ. App. 192, 23 S. W. 287, is not necessarily opposed to this conclusion. But no objection was made to the introduction of the evidence because of lack of special pleading, and the case was fully developed and tried on the theory that the defendants, under the general denial, could show that the facts relied on by plaintiff did not impose any liability under the terms of the very contract relied on by the plaintiff itself. The judgment on its face is consistent with the pleading, so we do not think the question could at any rate be considered as presenting fundamental error apparent of record.

The motion for rehearing will be overruled.

HALL, J. I dissent, for the further reason that the evidence was admitted for the purpose of explaining an ambiguity, if any, without sufficient pleadings to admit it. Morgan v. Turner, 4 Tex. Civ. App. 192, 23 S. W. 287.