■ Mr. Justice McLEAN
 

 delivered the opinion of the court.
 

 This case is before us on a writ of error to the Circuit Court of Massachusetts.
 

 The action was brought by Emerson against Slater, on an agreement made the 14th day of November, 1854, in which Emerson, “in consideration of the agreement of said Slater,
 
 *234
 
 hereinafter contained, and of one dollar to him paid, covenants and agrees, with said Slater, that he will complete all the bridge work to be done by him for the Boston and New York Central Railroad Company, ready for laying down the iron rails for one track, by the 1st day of December next.”
 

 “And the said Slater, in consideration of the premises, hereby agrees, with said Emerson, that he will pay him, within two days from the date hereof, the sum of forty-four hundred dollars, in cash. And the said Slater further agrees, that he will give to the said Emerson, on the completion of the bridges, and when the rails for one .track are laid to the foot of Summer street, in Boston, from Dedham, his (said Slater’s) five notes,for two thousand dollars each, dated when said notes were fiven, as above provided, and payable in six months from their ate,'to the said Emerson or his order. Said notes, when paid, are to be applied towards the indebtedness of said Boston and New York Central Railroad Company to said Emerson; it being understood that this agreement is in no way to affect any contract of said Emerson with said company, or any action now pending.”
 

 The execution of this agreement was admitted, and that the work upon the bridges, in said agreement set forth, was completed, ready for laying down the iron rails for one track, about the middle of December, 1854, and that the rails were laid to the foot of Summer street, in Boston, from Dedham, about the’ last of the same month.
 

 It was proved that the defendant was President of the Boston and New York Central Railroad Company, and a stock-' holder and bondholder in the same. The corporation failed on or about the 2d of July, 1854. The company was then indebted to the plaintiff, and did not pay him. In the second week of July, there was a crisis in the affairs of the company, and Emerson suspended his work, so far as regarded new outlays. In August a new arrangement was made, and he went on till the first or second week in November, and then he kept a force on the great bridges sufficient to retain possession of the work, and would not surrender it; the witness ("Willis) then made an effort to get the bridges completed.. .The question was, how much Emerson would take. The company owed him some ten to fifteen thousand dollars, and was then insolvent as respected meeting its engagements.
 

 The defendant then introduced an agreement between the Boston and New York Central Railroad Company, a corporation, and Charles Emerson, of Boston, in which Emerson agreed to build and complete, sufficient for the passage of an engine over the same, on or before the first day of May next,
 
 *235
 
 all the bridging as now laid out and determined upon by the engineer of said railroad, from the wharf near the foot of Summer street, in Boston, and from .South Boston across the South Bay, so called, to the Dorchester shore, in Dorchester, in the manner and with the materials hereinafter described, and to finally complete the same to the satisfaction of the State commissioner and the engineers of said railroad, as soon after the first day of May next as maybe. Several other, bridges were required to he built on' the road, Emerson furnishing all the materials, excepting the iron rails, chains, and spikes, which were to be furnished by the Railroad Company. This contract was dated the 23d of December, 1853, and signed by the parties,
 

 A receipt, dated November 15th, 1854, signed by Emerson, acknowledged the payment of forty-four hundred dollars, by Slater, oh the contract first, above stated.
 

 E. B. Ammidown, a witness, stated he was a director on the railroad, and that in November, 1854, there were negotiations pending for a contract for a through route from Boston to New York, between the Boston and New York Central Railroad Company and the Norwich and "Worcester Railroad Company, and the Steamboat Company plying between Norwich and New York. The contract, then existing between said Steamboat Company and Norwich and Worcester Railroad Company with the Boston and Worcester Railroad Company would expire about December 1st, 1854. It was necessary that said Steamboat and Norwich and Worcester Railroad Companies should make a new contract. They preferred to contract with us instead of the Boston and Worcester Railroad Company, provided our road could be ready to run by December 1st, 1854. The only part of our road, as to which there was "any doubt of its completion, was the bridges, which the plaintiff was making. The whole matter was talked over, in the presence of the plaintiff. We regarded it as of very great importance. I considered the loss of that contract equal to a quarter of a million of dollars, and the plaintiff said half a million. Committees from Norwich and Worcester Railroad and Steamboat Companies came on, to make the arrangement, and went over part of the road. Whether this was before or after the contract the witness cannot say, hut he has little doubt that it was before.
 

 J. C. Hurd, a witness, and who was also a director, and as a committee, about the 14th of August, 1854, 'made a parol contract with Emerson to pay him $17,000, and secure to him $6,000 of Earnum, with endorsements. A larger sum than $17,000, he thinks, was paid at the time of the contract.
 
 *236
 
 Emerson agreed to go on and finish, the work, but he declined to sign a written agreement.
 

 On the above evidence, the defendant fhoved the court to rule and instruct the jury, that by the true construction of said contract declared on, the plaintiff would not be entitled to recover without showing that the work was completed, ready for laying down the iron rails for one track, by the first day of December, 1854; but the court refused so to instruct the jury, and did instruct them that the agreement on the part of the defendant to give the notes in said agreement mentioned was not dependent on the completion of said work, ready for laying down said rails for one track, at the time limited by said contract. To which ruling and refusal the defendant excepted.
 

 And the defendant further requested the court to rule and instruct the jury, that if the plaintiff failed to complete said work, ready for laying down said iron rails for one track, by the said first day of December, there was thereby a failure of. the consideration of said contract, and the plaintiff would not be entitled to recover the amount claimed by him, or any part thereof; but the court refused so to instruct the jury. To which refusal the defendant excepted.
 

 The judge having first called upon the defendant to offer evidence, if he saw fit, of any actual damage by him sustained by the non-performance of said work within the time limited by said contract; and the defendant declining to offer any such evidence, and admitting that no such damages were claimed, by him in the suit, the court thereupon instructed the jury to. deduct, from any sum they might find for the plaintiff, the sum of one dollar — as nominal damage, for the said non-performance of plaintiff. To which the defendant excepted.
 

 The jury found for the plaintiff ten thousand one hundred and ninety-nine dollars.
 

 The declaration contains four counts. The first one alleges the work was completed by the 1st of December, 1854; the second, on the 20th of December; third, the same time; the fourth, the same as the second, with an allegation that the defendant waived the time fixed for the work to be completed to the 20th of December.
 

 < This contract cannot be satisfactorily understood or construed v without reference to the circumstances under which it was made. From the evidence* it appears that the work to be completed by the 1st of December was provided for by a previous contract, dated 17th December, 1851, in which the details and prices of the work were specially stated to be so: constructed as to admit of an engine to run oyer it on or before;
 
 *237
 
 the 1st of May ensuing, and the whole to he completed as soon after that period as practicable.
 

 The company, it seems, had become embarrassed, and were unable to make payment for the work as it progressed; still the contractor, Emerson, was unwilling to give up the contract, and retained a few hands - in his employ on different parts of the work, so as to retain the possession of it.
 

 Another fact to he noticed as important was, that if the road could be completed by the 1st of December, the company had an assurance that a contract could be made with the Steamboat Company plying between Norwich and New York, making a continuous line between Boston and' New York. This was considered an object of great importance — equal, as was supposed by a witness, to a quarter of a million of dollars, and, as the plaintiff supposed, to half a million.
 

 The defendant was President of the Boston and New York Central Railroad — a stockholder and a bondholder in the samé; but it does not appear that he had any authority to bind the company, as he entered into the contract in his individual capacity.
 

 TJnder these circumstances, the contract on which the action is prosecuted was made. It will be. at once perceived there was a strong motive to have the work completed by the 1st of December ensuing, by all who had an interest in the Central railroad. The sum to be paid by Slater was not in addition to the price stipulated in the former contract, but in discharge of so much of that contract.
 

 All these facts being admitted or undisputed, we will consider the language of the contract. It states “that the said Emerson, in consideration of the agreement of said Slater, hereinafter contained, and of one dollar to him paid, the receipt whereof is acknowledged, covenants and agrees with said Slater, that he, the said Emerson, will complete all the bridge work to be done by him for the Boston and Central Railroad Company, ready for laying down the iron rails for one track, by the 1st day of December next.”
 

 There is no ambiguity in this language. No one can misconstrue it. The work specified was to be completed by the 1st day of December. And the said Slater, “in consideration of the premises,” that is, the completion of the work, “hereby agrees with said Emerson, that he will pay him, within two . days from the date hereof, the sum of forty-four hundred dollars in cash; and the said Slater further agrees that he will give to the said Emerson, on the completion of the bridges, and when the rails for one track are laid to the foot of Summer street, in Boston, from Dedham, his (said Slater’s) five
 
 *238
 
 notes for two thousand dollars each, dated when said notes are given, as above provided, and payable in six months.”
 

 The-notes were to be given on the completion of the bridges, and when the rails for one track are laid to the foot of Summer street, in Boston; and from this it is argued that the covenants in the agreement are independent. Much is found in the opinions of courts and elementary writers in regard to dependent and independent covenants. And it is said, “where ' the acts stipulated to be done are to be done at different times, the stipulations are to be construed as independent of each other.” This, as a general rule, is correct, but it is subject.to the intention of the parties, as signified in the language of the contract. The, great rule is to ascertain the intent of the parties from the language used.
 

 ' The work was to be done by the 1st day of December; and Slater agreed to give his notes, payable in six months after the work was completed; the time of giving the notes, therefore, is referable to the time fixed for the completion of the work. In no just or legal sense can this language be held to enlarge the time limited in the contract.
 

 It is said by some writers, that it is impossible to make time of the essence of the contract where damages may compensate for the delay. But this is not correct as a general proposition. And a more fit illustration of this can scarcely be found than the contract under consideration. The amount of compensation for the work is not increased or diminished,by the new contract. The first contract stands in all its force, unaffected by the second, except that the payments made under the second shall be applied as a credit on the first. The obligation assumed by Emerson in the new contract was, to finish the work, as stated, by the 1st of December, in consideration that forty-four hundred dollars should be paid to him in two days, and notes given for ten thousand dollars on the completion of the work. Slater, having no other interest in the work than any other stockholder and bondholder of similar amounts, paid the forty-four hundred dollars, and agreed to give his individual notes for the ten thousand dollars. In this contract he stands in the relation of a surely, and can only be held responsible under his agreement.
 

 That time was an' essential part of this contract is clear from the circumstances under which it was made, and the intent of the parties, as expressed. The continuous line to New York was the strong motive to Slater, and that could be secured only by the completion of the work on or before, the 1st of December.
 

 ■ The defendant prayed the court to instruct the jury .that the
 
 *239
 
 plaintiff could not recover without showing the work was completed, ready for laying down the iron rails for one track, hy the 1st day of December, 1854, which the court refused to do. In this, we think, there was error. On a contract where time does not constitute its essence, there can be no recovery at law on the agreement; where the performance was not within the time limited. A subsequent performance and acceptance by the defendant will authorize a recovery on a
 
 quantum meruit.
 

 It is difficut to perceive any satisfactory mode by which the defendant in the Circuit Court could recoup his damages for the failure of the plaintiff to perform in that action, or by bringing another suit. -As a stock and bond holder, his damages would be remote and contingent. To ascertain the- general damage of the company by the failure, and distribute that amount among the members of the company in proportion to their interests, would seem to be the proper mode; and this would be complicated, and not suited to the action of -a jury.
 

 The judgment of the Circuit Court is reversed, with costs.