## JONES v. CITIZENS' STATE BANK.

No. 2830.   Opinion Filed September 23, 1913.

(135 Pac. 373.)

1.    **TRIAL—Sufficiency of Answer—Raising Question by Motion to Direct Verdict.** Where answer denying execution of note is not verified as required by section 2986, St. Okla. 1893 (section 4759, Rev. Laws 1910), but plaintiff joins issue thereon by general denial in reply, and, without in any manner raising the question of sufficiency of answer, evidence pro and con is introduced upon the trial, a motion to direct a verdict for plaintiff does not question the sufficiency of the answer, but raises merely the question of the legal sufficiency of the evidence to sustain a verdict against plaintiff.

2.    **PLEADING—Amendment — Verification.** Where insufficiency of answer, for want of verification, as denial of execution of note sued on, is not questioned in any way, and its sufficiency appears to have been assumed by both parties throughout the trial, an amendment, by verification, may be allowed in fur-

therance of justice before or after judgment, under section 4017, St. Okla. 1893 (section 4790, Rev. Laws 1910).

3. **APPEAL AND ERROR**—Review—Presumption—Direction of Verdict. The question of error in peremptory instruction of verdict must be determined by eliminating all adverse evidence and accepting as true all evidence, including every reasonable inference deducible therefrom, in favor of the party against whom such instruction was given.

4. **TRIAL**—Direction of Verdict. A verdict cannot be peremptorily instructed against a party where the evidence would sustain one in his favor.

5. **BILLS AND NOTES**—Bona Fide Purchaser. A note given for purchase price of property and made payable to plaintiff at request and for benefit of seller is subject, in hands of plaintiff, to all infirmities in the execution and original consideration between the maker and such seller, in the absence of circumstances creating an estoppel in equity.

6. **SAME**—Conditional Delivery. A promissory note may be delivered by the maker to the payee, subject to a condition which prevents it from becoming a complete contract *in praesenti*, where there is a failure to perform or comply with such conditions.

7. **TRIAL**—Reception of Evidence—Defect of Admission of Evidence. Evidence which is not of the quality or character required by law, although not intrinsically destitute of probative quality, admitted without objection, and not in conflict with legal evidence, should be considered as if it was legal evidence.

8. **BILLS AND NOTES** — Action on Note — Direction of Verdict. Where, in a suit on a note made for purchase price of real property and made payable to plaintiff at the request and for the benefit of the seller, there is some evidence tending to prove that there was no absolute delivery of same and same passed into possession of plaintiff subject to the condition that the seller must convey title to such property to such maker by warranty deed, and where such seller has and can convey no title to such property, and where plaintiff does not part with anything of value nor suffer any detriment as a result of the conduct of the maker of same, it is error to peremptorily instruct a verdict for plaintiff.

(Syllabus by Thacker, C.)

*Error from County Court, Okfuskee County;*
*W. A. Huser, Judge.*

Action by the Citizens' State Bank against Berry Jones. From a judgment for plaintiff, defendant brings error. Reversed, and remanded for new trial.

*Huddleston & Hockensmith,* for plaintiff in error.

*J. B. Patterson,* for defendant in error.

Opinion by. THACKER, C.   Plaintiff in error will be designated as defendant and defendant in error as plaintiff, in accord with their respective titles in the trial court.   Plaintiff, as payee in possession, sues on a promissory note, dated December 13, 1909, due February 12, 1910, for the principal sum of $400, with interest at the rate of 10 per cent per annum from date until paid, interest to become as principal when due and bear the same rate of interest, signed by defendant.

In plaintiff's petition it is alleged that defendant, being indebted to it, executed and delivered the note; and defendant's answer, besides a general denial, alleges that he signed but did not deliver the note to plaintiff, and further that same was given in consideration that one S. M. Wilson would, by good and sufficient deed, convey to defendant an undivided one-half interest in and to a certain quarter section of land; that this note was placed in the hands of plaintiff upon condition that it should be returned to defendant if Wilson did not make such conveyance; that Wilson never had any right, title, claim, or interest in or to said real property and failed and refused to convey any to defendant.   The answer further alleges that at the time of this transaction Wilson was indebted to plaintiff and was credited on such indebtedness by the amount of said note.   It is also alleged in the answer that plaintiff had full knowledge of and assented to the agreement and understanding aforesaid and was not a *bona fide* purchaser of the note in due course for value and without notice and the note was without consideration.   The answer was not verified as required by section 3986, St. Okla. 1893 (section 4759, Rev. Laws 1910), of denials of the allegation of the execution of such instruments.   Plaintiff replied by general denial of the allegations of the answer; and a trial was had upon the issues thus made, without any attack whatever being made upon the answer for want of verification.

Plaintiff's president, Mr. Dill, who was its only witness, testified that this note, which was put in evidence, was drawn

by him and signed by defendant in his presence behind plaintiff's counter at about 3 o'clock on the afternoon of its date in consideration of $400 by it loaned to defendant; later this witness said the money was advanced to Wilson before the note was given and in defendant's absence, but without claim that such advance was at the instance or request of defendant, or even with his knowledge.

Defendant contradicted the foregoing testimony of plaintiff's president as to the consideration of the note and as to the time and presence of said president when he signed it. The substance of defendant's testimony pertinent here will appear from the following questions to and answers by him at the trial:

"Q. Did you ever speak to Mr. Dill about loaning you any money? A. No, sir; never asked him for any money. Q. Did he loan you, or any other person in the bank loan you, $400 at the time you executed that note? A. No, sir. Q. State how you came to sign that note? A. Sam Wilson got it on his place and he was wanting to sell it to me and Dill also, and Dill spoke to me about it and said, 'If you will buy it, we will wait four months on you, if you will buy the place;' and it went on for about two weeks. Sam Wilson come to me about that time and said, 'The deed is wrote up and the note is ready for you to sign, and I am going away on the noon train to Arkansas, and I want it fixed up before I leave;' and I goes to the Citizens' Bank and signs this note. Flesher handed me the deed and I stuck it in my pocket. Bert turned to go out of the bank and I think I handed him the note to look at, and I looked at it [evidently meaning the deed]; it was a quitclaim deed; and I turned round and said I wouldn't stand for that; said if I bought it that I didn't want a quitclaim deed. He argued it was all right. I said I would have to have a warranty deed if I got it. They told me to take it to any lawyer in town and see if it is not all right. Sam Wilson says to me, 'I will make you a warranty deed if it is not all right;' so I taken it to Huddleston and he said it was no good; 'it only conveys his interest if he has got any, it looks like to me.' So I called Sam up; he had gone home. It was then 11 o'clock, and it might have been a little after, for I look at my watch and—Well, Dill [evidently meaning Sam Wilson] said he would meet me back at the Citizens' Bank and make me a warranty deed, and then he said, 'Can you wait till I come back from Arkansas?' I said, 'Yes;' and he goes then on to Arkansas; and during this time we examined the title

and he had no interest himself to the land. He offers to make me a warranty deed at the First National Bank. I said I didn't want it; that he had no interest in it; and I wanted him to give me my note back and take the deed. Q. I will ask you to state if you, on the 13th of December, 1909, if you had a conversation with Flesher or Dill relative to the note and deed after this first transaction? A. Dill wasn't in town at the time, so I did with Flesher; then I told him I wouldn't accept it and also that I didn't consider the note any good until this thing was fixed up. Dill come in on the 3 o'clock train. I went up about 3:30, and he was back in the bank then. I took the deed to him and told him I wanted the note, so Dill told me he wouldn't do it; he wouldn't turn me back my note. Q. Have you still got the deed? A. Yes, sir. Q. Are you still willing to return it to S. M. Wilson? A. Yes, sir. Q. Have you got that deed now in your possession? A. Yes, sir. Q. I will ask you to examine this instrument and see if you can identify it. [Hands witness deed for examination and identification.] A. Yes, sir; this is the quitclaim deed. Q. From whom? A. From Sam Wilson. Q. To whom? A. M. L. Jones. Q. To whom was this land to be conveyed that you were buying from Wilson? A. M. L. Jones. Q. Is that the deed that Wilson delivered to you in the Citizens' State Bank on December 13, 1909? A. Yes, sir. Q. At the time you took that deed, state to the jury, Mr. Jones, whether you accepted it as a legal, valid instrument for the purpose of taking a title, or whether it was taken for the purpose of having it examined by attorneys? A. For the purpose of having it examined by attorneys after I noticed it was a quitclaim deed. Q. After having that deed examined by an attorney, what did you do, Mr. Jones, with the deed? A. I just kept it; that is, I offered it back to Dill that evening at 3 or 3:30, after the 3 o'clock train come in. Q. Did you keep that with the intention of owning that land under that deed or because they wouldn't accept it back? A. Because they wouldn't accept it back. * * * Q. Did you know when Sam got his deed from Willie Yarholar? A. No, sir; I didn't know it. Q. I will ask you if you mean it for a fact that you and Sam had been on a deal for the land some time prior to the time Sam had the deed from Billie Yarholar to himself approved? A. This land, now? Q. Yes, sir. A. Sam didn't say a word to me about this until he had already got it. Q. Did you say anything to him about it? A. No, sir; I never said nothing to him before this deal occurred. Q. Now, isn't it a fact that there was an understanding between you and Sam prior to the time Sam got his deed from

Jones v. Citizens' State Bank.

Billy Yarholar for you and him to get this land, or for him to get the conveyance from Yarholar for the purpose of getting it for you? A. No, sir; no such understanding. Q. No such agreement with you? A. No, sir. * * * Q. Now, you say there was no understanding between you and Wilson, when he got the land from Yarholar, that he was to convey it to you? A. No, sir. Q. None whatever? A. No, sir. Q. At the time that the deed was delivered to you, the only objection you had to it was that it was a quitclaim? A. I told him this: I says, 'This don't convey anything, Sam.' That was at the bank. 'I don't think it does,' I said, and we had quite a talk. He said to take it to any lawyer in town and see if it was not all right. I called him up at home and told him to come down and make me a warranty deed, and he wanted to wait to go to Arkansas. After he come back from Arkansas he said he would do it. Q. It was agreed between you and Sam that you would give Sam the $400 for the land? A. Yes, sir; if he would make me a warranty deed. Q. It was agreed that you would get it? A. Yes, sir. Q. It was also agreed between you and him that the bank would furnish this money and you would give your note to the bank? A.. No, sir; nothing said about me borrowing money from the bank. I was to give my note for part of the land. Dill said, 'If you will take the land, I will wait on you for four months.' Q. Now, you don't know whether Sam got the money for that note or not? A. No, sir; I don't know what he got. * * * Q. Did Mr. Dill say anything to you about an interest in the land? A. He told me when he was talking to me that he had an interest in it and him and Sam would sell it to me."

From the record of a case wherein defendant was plaintiff and several parties, including Billie Yarhola and S. M. Wilson, were defendants in the district court of Okfuskee county, defendant offered in evidence what his counsel stated was a final judgment in said case to the effect that Billie Yarhola and S. M. Wilson "had no right and title"; but, upon objection that it was incompetent, irrelevant, and immaterial, the court refused to permit the same to be read to the jury. Defendant excepted but omitted to put this purported judgment into the record of the case; and we are therefore not informed as to its contents.

At the conclusion of the introduction of all the evidence, plaintiff demurred to defendant's evidence and, when the same

was sustained, asked the court to instruct the jury to return a verdict in its favor, which was done; and a verdict was accordingly returned for $479.90.

A motion to direct a verdict does not question the sufficiency of the pleadings in this case, but raises merely the question of the legal sufficiency of the evidence to sustain a verdict against the moving party (*Kroeger v. Twin Buttes R. Co.* [Ariz.] 127. Pac. 735, and 38 Cyc. 1565, and cases cited in the notes thereto); and in the present case the demurrer to the evidence and the motion to peremptorily instruct a verdict, as well as such instruction, in legal effect, eliminated from consideration all adverse evidence which the jury would have been at liberty to disregard and admitted the truth of all the evidence, together with every reasonable inference deducible therefrom, in favor of the defendant. *T. S. Reed Grocery Co. v. Miller,* 36 Okla. 134, 128 Pac. 271; *Moore v. First Nat. Bank of Iowa City,* 30 Okla. 623, 121 Pac. 626; *St. L. & S. F. R. Co. v. Posten,* 31 Okla. 821, 124 Pac. 2; *C., R. I. & P. Ry. Co. v. McCulley,* 30 Okla. 178, 120 Pac. 279; *Solts v. Southwestern Cotton Oil Co.,* 28 Okla. 706, 115 Pac. 776; *Cooper v. Flesner,* 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. (N. S.) 1180, 20 Ann. Cas. 29; *Harris v. M., K. & T. Ry. Co.,* 24 Okla. 341, 103 Pac. 758, 24 L. R. A. (N. S.) 858.

A denial of absolute and the allegation of conditional delivery of the note in the answer is, in effect, a denial of complete execution of the same, it appears. See *Clark v. Child,* 66 Cal. 87, 4 Pac. 1058; *Le Mesnager et al. v. Hamilton et ux.,* 101 Cal. 542, 35 Pac. 1054; 40 Am. St. Rep. 81; *Ivey v. Kern County Land Co.,* 115 Cal. 196, 46 Pac. 926; *Howard Ins. Co. of New York v. Silverberg et al.* (C. C.) 89 Fed. 168; *Van Valkenburgh v. Oldham et al.,* 12 Cal. App. 572, 108 Pac. 42.

The answer, as to this defense, apparently should have been verified (section 3986, St. Okla. 1893, same being section 4759, Rev. Laws 1910); but, even if it should be thought that this question was raised by the demurrer to the evidence and the motion to instruct a verdict, this defect was waived by the filing of plaintiff's reply denying the allegations of the answer and

the proceedings had to the conclusion of all the evidence in the case, which includes evidence on either side of this issue as to the complete execution of the note, without any objection or question as to such defect by plaintiff and apparently upon the assumption by both parties that same had been properly verified (*Doughty v. Funk,* 24 Okla. 312, 103 Pac. 634; *Johnson v. J. J. Douglass,* 8 Okla. 594, 58 Pac. 743; *Glasco v. S. D. No. 22, McClain County,* 24 Okla. 236, 103 Pac. 687; and *Kaufman v. Boismier,* 25 Okla. 252, 105 Pac. 326); and the case of *Commonwealth National Bank of Dallas, Texas, v. Baughman,* 27 Okla. 175, 111 Pac. 332, does not hold that such defect may not be so waived; but, even at the time of the return of the verdict, the answer was susceptible of amendment by verification (*Light v. Canadian County Bank,* 2 Okla. 543, 37 Pac. 1075; section 4017, St. Okla. 1893 [section 4790, Rev. Laws 1910]), and the sufficiency of the evidence to sustain a verdict for defendant is the sole question that could have been determined by the trial court upon the motion for the instructed verdict.

In *Bradshaw et al. v. Miners' Bank of Joplin et al.,* 81 Fed. 902, 26 C. C. A. 673, it was held:

"A note given for the purchase price of property and made payable to a bank at the request and for the benefit of the seller is subject, in the hands of the bank, to all infirmities in the original consideration between the payors and such seller, in the absence of circumstances creating an estoppel in equity."

It certainly cannot be said, as a matter of law, that the undisputed evidence shows plaintiff to be a *bona fide* holder, for a valuable consideration, who acquired the note in the ordinary course of business and without notice of facts which impeach its validity as between Wilson and defendant.

It seems clear that if the testimony of the defendant, with every reasonable inference that may be deduced therefrom in his favor, be accepted as true, and all the adverse evidence be eliminated, as must be done for the purpose of this decision, the note was and is subject to all the defenses because of infirmities in the execution and original consideration that might have been

made against it if it had been made payable to S. M. Wilson instead of to plaintiff and was sued on by Wilson instead of plaintiff.

In *Tovera v. Parker et al.,* 35 Okla. 74, 128 Pac. 101, it is held: "A promissory note may be delivered by the maker to the payee upon condition or as an escrow." The case of *Horton v. Birdsong,* 35 Okla. 275, 129 Pac. 701, is to the same effect; and this appears to be the general rule. See *McNight v. Parsons,* 136 Iowa, 390, 113 N. W. 858, 125 Am. St. Rep. 265, 22 L. R. A. (N. S.) 718, 15 Ann. Cas. 665, and notes thereto, as well as *Oakland Cemetery Association v. Lakins,* 126 Iowa, 121, 101 N. W. 778, 3 Ann. Cas. 559, and notes thereto.

The purported judgment offered by defendant and excluded by the trial court is not before us; and we therefore are unable to determine the question of its admissibility except upon the presumption that the trial court did not err in excluding it.

It is well settled that, where the evidence excluded by the trial court does not appear in the record, the question of its admissibility is not presented for review here. *Turner v. Moore,* 34 Okla. 1, 127 Pac. 487; *Nat. Drill & Mfg. Co. v. Davis,* 29 Okla. 625, 120 Pac. 976; *Offutt v. Wagoner,* 30 Okla. 458, 120 Pac. 1018; *Muskogee Electric Traction Co. v. Staggs,* 34 Okla. 161, 125 Pac. 481.

The testimony of defendant to the effect that Wilson had and therefore could convey no title or interest in this property was, of course, an opinion or conclusion of the witness, not so much as accompanied by a statement of the facts upon which it was based; but there was no objection to the same, nor was defendant's claim that Wilson had and could convey no title inconsistent with any other evidence in the case or in any manner questioned by plaintiff in the trial.

"*Concensus tollit errorem;* the acquiescence of a party who might take advantage of an error obviates its effect." (2 Hughes on Procedure, 507.)

In 17 Cyc. 800, it is said:

"Parties have a right to try their case on evidence which is not of the quality or character required by law; and where such evidence is admitted without objection it is the right and

duty of the court or jury to give it the same consideration as if it were legal evidence. But evidence intrinsically destitute of probative.qualities acquires no attribute in point of weight by its production in the case. Secondary evidence admitted without objection cannot avail to contradict primary evidence."

In *Uhl v. Moorehous*, 137 Ind. 445, 37 N. E. 366, it was said: "It is certainly an error to suppose that ownership may not be proven by parol where no objection is interposed."

In brief for plaintiff it is said:

"The fact that Sam Wilson had no title or interest in the land he sought to convey, or that he is supposed not to have had any title or interest in the land, would not be a defense for Berry Jones against the collection of this note. The bank does not stand in the attitude of a guarantor of Sam Wilson's title. Mr. Jones should have had this looked up before he executed the note and before the bank parted with its $400."

Neither in the trial court nor here does any disposition on the part of plaintiff appear to question the truth of defendant's claim that Wilson had and could convey to him no title or interest in the land; and it appears that the case was tried and determined against defendant upon the theory that notwithstanding the fact that no consideration passed to him for the note, the fact that plaintiff advanced Wilson $400 or more, that defendant made the note direct to the plaintiff payee, and the fact that plaintiff took the note on account of Wilson's indebtedness to it entitled plaintiff to recover and precluded defendant from any defense he might have had against the note if it had been made to and sued upon by Wilson.

Weak though it may be, we are of opinion there was evidence tending to show that there was no absolute delivery and complete execution of the note; that, if there was any sort of delivery, it was subject to a broken condition preventing the note from becoming effective; and that the note was without consideration.

It follows that the court erred in refusing to grant defendant a new trial; and we are of opinion that the case should be reversed and remanded for a new trial.

By the Court: It is so ordered.