RIGSBY v. BOONE COUNTY STATE BANK OF LEBANON, IND.   (No. 1944.)

(Court of Civil Appeals of Texas. Amarillo. April 19, 1922. Rehearing Denied May 17, 1922.)

1. Bills and notes ☞467(3)—Named payee cannot be regarded as purchaser, in absence of pleading of mistake in designation.

Where a note, given for the purchase price of stock in a corporation, was made payable to a bank which paid the corporation therefor, the bank was to be regarded as the original payee, in whose hands the note would be subject to defenses growing out of the original contract, under Rev. St. art. 589, and not a purchaser of the note, in the absence of pleading that it was made payable to the bank instead of to the corporation, by mutual mistake of the parties.

2. Contracts ☞173—Promise to be performed before performance by other party is generally independent.

The rule that where a contract contains mutual promises, if the time for performance by one party of his promise is to arrive before the time for performance of part of the agreement by the other party, the latter promise is independent, and its breach does not defeat the enforcement of the first obligation, is subject to the great rule requiring the intent of the parties to be ascertained from the language used.

3. Contracts ☞173—Provision going to entire consideration is not independent.

Generally, where a contract provision claimed to be independent goes to the entire consideration, it is not independent.

4. Contracts ☞173—In case of doubt promises deemed dependent.

In case of doubt, the promises contained in a contract will be considered dependent.

5. Evidence ☞450(8)—Memorandum executed contemporaneously with note held ambiguous, justifying admission of parol evidence; "that date."

Where the corporation and a purchaser of its stock executed, at the time the note for the purchase price of the stock was given, a memorandum stating that, if the purchaser was dissatisfied with the proposition within one year, the corporation would take the entire deal off his hands at any time after that date, the expression "that date" definitely fixed the period as one year after the date of the contract, but the memorandum would sustain the construction, either that the corporation was bound to repurchase the stock and assume the obligation of the purchaser on his note, or that the purchaser was entitled to a rescission of the entire transaction and the cancellation of all un-

*performed* obligations, so that parol evidence was admissible to establish the meaning of memorandum, and its construction became a question of fact (citing 2 Words and Phrases, First Series, Date).

**6. Contracts ☜250—Reservation of right to rescind is valid.**

A reservation in a contract of a right on behalf of one of the parties to rescind is a valid stipulation, and, upon the exercise of the option to rescind, the rights of the parties under the contract terminate, and the other party is bound to restore whatever consideration he may have received.

**7. Bills and notes ☜97(1)—Rescission of contract destroys obligation of note for which contract was consideration.**

The rescission by agreement of the parties of a contract, which formed the consideration for the note in suit, destroys the obligation of the note; the consideration failing.

**8. Contracts ☜173—Party rescinding need not pay note and sue other party for amount.**

A provision in a contract giving one party an absolute right of rescission could not be an independent provision, so as to require the party rescinding to pay the note given in consideration of the contract, and thereafter bring suit against the other party for the recovery of the amount paid.

*On Motion for Rehearing.*

**9. Bills and notes ☜537(6)—Question for jury whether holder had notice of right to rescind contract for which note was given.**

In an action on a note, given for the purchase price of corporate stock, under a contract giving the purchaser the right to rescind within a year, evidence *held* to make it a question for the jury whether the bank which was the holder of the note had been notified of the purchaser's right to rescind before it completed the purchase.

**10. Evidence ☜78—Facts held not to show defendant suppressed evidence justifying directed verdict against him.**

In an action on a note given for the purchase price of corporate stock, where defendant made no demand on plaintiff to produce his contract to represent the corporation as agent and did not show that the corporation had no copy of the contract, testimony by plaintiff and his attorney, that the contract was delivered to the attorney who advised plaintiff it was valueless, and that neither party knew where it was or whether it had been destroyed, did not show plaintiff was guilty of suppression of evidence and did not authorize the direction of a verdict for defendant on that ground.

**11. Contracts ☜272—Action unnecessary to consummate rescission by agreement.**

Where a contract gives one party the option to rescind at any time within a year, notice of the exercise of such option completes a rescission by agreement, which terminates the obligations of the contract without the necessity of bringing an action to rescind.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by the Boone County State Bank of Lebanon, Ind., against G. D. Rigsby, to recover the balance due on a promissory note. Judgment for plaintiff on directed verdict, and defendant appeals. Reversed.

Thomas, Frank, Milam & Touchstone, of Dallas, and Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellant.

Kay, Akin & Kenley, of Wichita Falls, for appellee.

BOYCE, J. The Boone County State Bank of Lebanon, Ind., appellee, brought this suit against the appellant, G. D. Rigsby, to recover a balance due on a note for $20,000, executed by Rigsby and payable to the bank, and to foreclose a lien on 1,000 shares of the capital stock of the Burdick Tire & Rubber Company, evidenced by certificate issued in the name of Rigsby, and deposited with the bank, as collateral to secure the payment of said note. Rigsby pleaded several special defenses, but, in disposing of the appeal, it is necessary to notice only one of these. This defense was, in substance, that the note was given in payment for said 1,000 shares of the capital stock of the said tire and rubber company; that Rigsby purchased said stock of said company and executed his note therefor under contract with it that gave Rigsby the right to rescind the contract of purchase at his option at any time within one year after the date of said note; that the bank took said note with full knowledge of said agreement; and that the defendant has exercised his right and rescinded said contract. Judgment was rendered for plaintiff, on verdict returned on peremptory instruction by the court.

The evidence, stating it most favorably to the appellant, and without reference to conflicts, tends to show that the defendant purchased the shares of stock of the tire and rubber company referred to through one J. C. Hermann, its fiscal agent, and executed the note in payment therefor. Rigsby supposed that the note was payable to the tire and rubber company and did not notice that it was payable direct to the bank, and it may be inferred that the use of the bank's name, as payee, was the result of a mistake coming about from the use of the bank's' blank form of note. In addition to the purchase of the shares of capital stock, Rigsby and the tire and rubber company entered into an agreement, by the terms of which Rigsby was to have the exclusive agency for the sale in the state of Texas, of the products of the tire and rubber company. At the same time, and as a part of both these contracts, the tire and rubber company executed and delivered to Rigsby this written memorandum:

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Lebanon, Ind., Nov. 1, 1918.

"We, the Burdick Tire & Rubber Company, through J. C. Hermann, its fiscal agent, hereby guarantee that if G. D. Rigsby is dissatisfied with our proposition within one year, that we will take the entire deal off his hands at Burkburnett, Texas, at any time after that date.

"Burdick Tire & Rubber Company,
"Per J. C. Hermann."

Hermann, before the transaction was closed, had arranged with the bank to sell the note to it. The note was delivered to Hermann, who thereafter delivered it to the bank, and the bank paid him the agreed consideration therefor. The note was indorsed by the tire and rubber company. Rigsby testified that, after delivery of the note to Hermann and before it was delivered to the bank, and before the bank paid anything therefor, he told the bank's officials that he had a contract with the Burdick Tire & Rubber Company—

"that if I became dissatisfied with this proposition within one year, that the note would be returned to me or canceled."

The note was payable six months after date, and, in reference thereto, Rigsby testified as follows:

"When I signed it I thought that they were going to hold it for a period of one year; that is the Burdick Tire & Rubber Company were to hold it. * * * They were going to let the note ride for a year. As to why we made it for six months, he said it was not the custom of his company to make notes for a longer period than six months but that he would make it for six months and then renew it or extend it at that time. It did not occur to me that they might sell the note; I did not think of that."

The evidence further tends to show that Rigsby, within the year, notified the bank and the tire and rubber company of the exercise of his right to rescind the contract.

[1] Before proceeding to consider the contract in question, we may say that there is no question of innocent holder to be considered. If the bank is to be regarded as the original payee, and it would seem that such would be its status, in the absence of pleading of mutual mistake, then the note in its hands is subject to any defenses growing out of the original contract under which it was given, in the absence of facts creating an estoppel in equity, to the same extent as if the note had been made to and held by the other party to the contract furnishing the consideration upon which it was given. R. C. S., art. 589; Bradshaw v. Miners' Bank, 81 Fed. 902, 26 C. C. A. 673; Jones v. Bank, 39 Okl. 393, 135 Pac. 373. But if the bank be regarded as a purchaser of the note, then the evidence presents an issue as to notice prior to its acquisition thereof.

[2] Appellee's principal proposition, in support of the action of the court in peremptorily instructing the jury in its favor, is that the agreement on the part of the tire and rubber company "to take the entire deal off Rigsby's hands," in the event of his dissatisfaction, is independent of Rigsby's obligation to pay the note, and that the obligation to pay the note continues and may be enforced, notwithstanding Rigsby had, prior to the maturity of the note and suit thereon, invoked the benefit of the provision of the contract referred to. In this connection it is urged that, where a contract contains mutual promises, if the time for performance by one party of his promise is to, or may arrive before, the time for performance of a part of the agreement by the other party, then the latter promise is independent and its breach does not defeat the enforcement of the first obligation. This proposition is a statement of one of the rules, and an important one—

"but it is subject to the intention of the parties, as signified in the language of the contract. The great rule is to ascertain the intent of the parties from the language used." Slater v. Emerson, 19 How. 224, 15 L. Ed. 631; 15 C. J. 1221, § 20.

[3, 4] It is also a general rule of construction that, where the provision claimed to be independent goes to the entire consideration of the contract, it is not independent. And another rule is that, in case of doubt, the promise will be considered to be dependent. 13 C. J. 571. With these preliminary statements we may proceed to consider the contract in this case.

[5] The meaning of the memorandum executed by the tire and rubber company, contemporaneously with the execution of the note, is not, we think, entirely clear. It, of course, required oral testimony to identify the "proposition" referred to. According to Rigsby's testimony the purchase of the stock, the note given therefor, the agreement for Rigsby's exclusive agency in Texas, were all parts of the same contract, and, under this testimony, the trial court could not properly have peremptorily instructed the jury, on the theory that this memorandum we are considering referred only to the agency part of the contract. But, giving the contract its broadest reference, it is not yet clear. It may indicate an intention to bind the tire and rubber company to a repurchase of the shares of stock and assumption of obligations incurred by Rigsby under the contract. Several features of the contract tend to indicate that such was the meaning of the parties. The fact that the note was payable to the bank, who was not a party to the contract, is one circumstance; another lies in the fact that perhaps, under the literal and strict construction of the memorandum, the tire and rubber company were not bound to take the deal of Rigsby's hands until after the expiration of one year from the date of the contract, though Rigsby may have exer-

241 S.W.—14

cised his option to avail himself of the privilege within a short time after the execution of the contract. The reference of the language used in fixing the time of performance of such agreement, "that date," is naturally to the fixed and definite period of time mentioned in the contract, to wit, one year from its date. Words and Phrases, vol. 2, First Series, p. 1830; Bement & Daugherty v. Trenton Locomotive & Machine Mfg. Co., 32 N. J. Law, 513, 515.

If such is the meaning of this part of the contract, it seems rather inconsistent with the theory that the contract was an option for absolute rescission. It would not seem very reasonable that the time for consummation of a rescission would be expressly postponed until after the time of maturity of the note, though the option for rescission may have been exercised before such maturity. Evidence as to Rigsby's transactions with the bank after it acquired the note tends also to support the conclusion that he regarded the agreement of the tire and rubber company to take the deal off his hands as independent of his obligation on the note, and rather as binding the tire and rubber company to assume his position under the contract. He explained these transactions by testifying that he was proceeding on the assumption that the bank was an innocent holder of the note. But such testimony is not conclusive as to its truth, and would present a matter for consideration of the jury. On the other hand, we think the memorandum is also consistent with an intention to provide for an absolute rescission of the contract, by canceling all unperformed obligations of the parties and restoring any consideration that may have already been paid thereon. Such would be the first impression created in the mind by the expression "take the entire deal off his hands." The contract shows on its face that it was not carefully drawn so as to accurately express the meaning of the parties. Its meaning, we think, is so doubtful that parol evidence was admissible to explain it. Lemp v. Armengol, 86 Tex. 692, 26 S. W. 942; Q., A. & P. Ry. Co. v. Cooper (Tex. Civ. App.) 236 S. W. 811. The terms of the writing cannot be contradicted, but—

"the conversations which attend the negotiation may be looked to for the purpose of showing the nature of the contemplated transaction."

A conclusion that the contract, construed in the light of the attending circumstances, was intended to provide a right of absolute rescission to Rigsby, would have been, we think, sustained by the evidence. The meaning of the contract became a question of fact, and, unless the court, under the construction just referred to, was nevertheless warranted in giving the peremptory instruction, the judgment must be reversed.

[6-8] A reservation in a contract, of a right in behalf of one of the parties to rescind, is a valid stipulation. Upon the exercise of the option, the rights of the parties under the contract terminate; the other party cannot insist on further performance and is bound to restore whatever consideration he may have received under the contract. Black on Rescission and Cancellation, § 512. While the holder of the note, falling due before the exercise of the option on Rigsby's part, may have forced collection prior to the time of the exercise of the option, yet, when Rigsby did exercise his right of rescission, that action operated itself to destroy the obligation of the note. The consideration for it then failed. The provision for absolute rescission, when invoked, could not be independent of the subsidiary promises, for, by its very nature, it controlled and operated upon these. The Supreme Court, in the case of Taul v. Bradford, 20 Tex. 263, said:

"As a general rule, it may be sound law, that a covenant on the part of the vendee, to pay the purchase money at a particular date, and of the vendor to convey, at some indefinite period, as, for instance, after a patent is obtained from the government, are not dependent upon each other, and that the purchaser must pay the money when due, and rely upon the covenant of the agreement for his remedy. But can this be the rule where it manifestly appears that there is a valid, outstanding title, superior to the claims of the vendor, or which, as long as it is permitted to stand, would prevent the vendor from procuring a patent for his land, and deprive him of the power to convey according to the conditions of his bond? This would involve that circuity of action and multiplicity of suits, so much discountenanced by our laws, and so repugnant to the genuine and fundamental principles of our procedure."

See, also, Wellington Railroad Committee v. Crawford (Tex. Com. App.) 216 S. W. 151.

So the proposition that the tire and rubber company, if the suit on the note had been brought by it instead of the bank which stands in its shoes, could after notice of rescission by Rigsby, have brought suit on, and forced payment of, the note even after the expiration of the year and required Rigsby to sue it on the agreement for rescission, would be more reasonable than the proposition that was repudiated in the above case.

We think the court was in error in giving the peremptory instruction, and the judgment will be reversed.

### On Motion for Additional Findings.

First. We see no necessity for amplifying our statement as to matters referred to in the first request.

Second. The pleading referred to in the second paragraph of this motion has nothing, in our opinion, to do with the questions controlling the decision of the appeal. The pleading is in the transcript and is available

to the appellee in any further proceeding it may desire to take in the case, to the same extent as if we made a statement thereof.

Third. In reference to the agency contract, executed at the time of the purchase of the stock, and referred to in the opinion, Rigsby, on cross-examination by appellee's attorney, testified as follows:

"There was something more to that than the mere purchase of this stock. I had contracted with them for the sale of the tires in Texas. I have got another contract. I don't know whether I have that contract or not; I don't know where it is. The last time I saw it was a year or more ago. I left it with him. My lawyer didn't tell me to send it back. I don't remember whether he said he would send it back. I didn't send it to any one, and I haven't got it, and I haven't seen it in a year. It was a printed instrument. I haven't got a copy of it. The contract was for the exclusive agency for the state of Texas, for a period of 20 years. * * * In this contract I agreed to handle their tires in Texas exclusively. * * * I contracted to maintain a place of business and give some of my time to it—not all of it. That was all I agreed to do."

Appellant's attorney was put on the stand by appellee and testified, in reference to such matter, as follows:

"I don't know where this contract is now. It might be in my office. It was in my office. I told Mr. Rigsby that he might as well tear it up; that it was not worth anything. I have not got it here."

The contract was not produced in evidence, and the foregoing seems to be all that the record contains in reference thereto. It does not appear that appellant had been notified to produce said contract.

Fourth. We think our statement as to the matters referred to in the fourth paragraph of the request was sufficient, but we add the following: Rigsby did not know at the time he made the contract with the tire and rubber company that the note was to be negotiated. After he executed the note, he was informed by the bank that it had purchased the note, and, at the request of the bank, put up the stock as collateral, made a financial statement to the bank, made some payments on the note, and acted as though he considered that he was absolutely bound to pay it. Rigsby's evidence, however, was sufficient to warrant the finding that the bank was only negotiating for the purchase of the note at the time it informed Rigsby that it had purchased it, and that Rigsby, before the purchase of the note by the bank was complete, informed the bank's officials that he had a contract giving him the right to rescind the trade at any time within a year; and his evidence will also support the conclusion that he was induced, by the false information as to the purchase of the note by the bank, to believe that the bank was an innocent holder and dealt with it on that assumption.

### On Motion for Rehearing.

[9] Strenuous objection is made to our statement that "there is no question of innocent holder to be considered." We were inclined to believe and are still of that opinion, that, in the absence of any pleading of mistake, the bank could not be regarded as being in any position with reference to the note other than that of payee, as it appears to be on the face of the paper. But it makes no difference whether it is to be held an original payee or a purchaser by indorsement, so far as our decision is concerned, since, according to Rigsby's testimony, the bank was informed, before it bought the note, of Rigsby's right of rescission, and, though this is disputed by the bank's officials, an issue of fact was presented that deprived the trial court of the right to peremptorily instruct the jury for the bank on the theory that it was an innocent purchaser of the note.

[10] Appellee charges the appellant with the "suppression of evidence" in the voluntary and intentional destruction of the writing, referred to as the agency contract, and contends that such act precluded appellant from offering any parol evidence to explain any ambiguity in the written contract that was in evidence. In the additional findings above stated, we have referred to what the record shows as to this matter. It does not conclusively appear that the plaintiff or his attorney have destroyed the contract referred to. So far as the record shows, no inquiry was made for this contract until appellant was asked about it on cross-examination on the witness stand. It does not appear whether the Burdick Tire & Rubber Company has a duplicate of it. The contract was, according to appellee's version, collateral to any issue in this case. The trial court did not reject the parol evidence on this account, and evidently did not base his peremptory instruction on these facts. The jury may have imputed no improper motive to the appellant in his failure to produce the contract under the circumstances, and the court would not have been warranted in giving a peremptory instruction on the theory that appellee had destroyed the evidence of the right asserted in this case. As to the rule in such matters, see Hutchison v. Massie (Tex. Civ. App.) 226 S. W. 698, and authorities cited; Jones on Evidence, par. 18, p. 117.

[11] The appellee makes a suggestion in the motion for rehearing that was not presented on original hearing, to wit, that appellant could only have relief by judgment for rescission; that he was not entitled to such relief in this case because the rescission that might be awarded could only be partial; and further that this could not be done without the Burdick Tire & Rubber Company being made a party to the suit. There would be some strength in this position if this were a suit for rescission or if appellant were bound to secure a judgment of court, rescinding the

contract before it was at an end. But this is not the case. If the appellant, by contract, was given an option to rescind, when he exercised the option and notified the other party of such fact, the contract then was at an end by the agreement of the parties, and it did not require any further consent or acquiescence of the other party. Black on Rescission and Cancellation, par. 512. Now—

"when a contract is rescinded or canceled, whether by consent of the parties or by judgment of court, it is abrogated for all purposes except only in so far as it must be looked to with regard to the restoration of the parties to their former situation, and hence no action can be maintained which is founded upon or grows out of a rescinded contract or which is only sustainable on the theory that such a contract remains in force." Black on Rescission and Cancellation, par. 704.

The defendant here is in the attitude of resisting the enforcement of an obligation of a contract that has been rescinded by mutual agreement of the parties thereto.

Appellee's counsel has a vision of dire events to follow our decision. He sees himself defeated before a jury in this case; his adversary armed with the judgment of the Texas courts, wresting from his client in Indiana the stock of the Burdick Tire & Rubber Company, and then doubly armed, collecting the $20,000 from the tire and rubber company, "leaving the bank a ragged beggar, outside the temple of justice." He has, we think, unduly frightened himself. While in his mood of dejection he "thinks that no lawyer could be found in Texas who would have the hardihood to say that it would or could work out in any other way," we confidently predict that his ability and learning will find some other way out.

The motions, except in so far as additional statements have been made in the foregoing opinion, are overruled.