FIRST NAT. BANK OF JASPER, MINN., Respondent, v. LARSON, Appellant.

(220 N. W. 506.).

(File No. 5755. Opinion filed July 14, 1928.)

*A. C. Halls,* of Garretson, and *Canfield & Michael,* of Luverne, for Appellant.

*Krause & Krause,* of Dell Rapids, for Respondent.

BROWN, J. At the time of the transaction which gave rise to this case A. K. Hanson was president and W. M. Lowe was cashier of the plaintiff bank. Lowe had a quarter section of land in Minnesota for sale in which neither the bank nor Hanson had any interest. On March 19, 1921, an agreement was made between Lowe and defendant for the sale of this land to defendant, by the terms of which defendant delivered to Lowe three Oldsmobile trucks valued at $5,000, and agreed to pay $1,000 cash, and the balance of $10,000 was to be paid by defendant assuming a mortgage on the land for $5,000 due March 18, 1926, and by giving on March 1, 1922, at which date deed was to be given, another mortgage for $5,000 due March 1, 1924. The contract contained a provision that, should default be made in any of its terms, the contract might be canceled and terminated, and all rights of the second party thereunder forfeited by notice given by Lowe.

Instead of paying the $1,000 in cash at the time of the execution of the contract, defendant gave two notes for $500 each, which are the subject of this action, one due July 1, 1921, and the other due September 1, 1921, both by their terms payable to plaintiff, and drawing interest at 8 per cent per annum.

In his answer, defendant alleges that these notes were given

to Lowe, but were made payable to the bank instead of to Lowe, at the instance and request of Lowe, but, at the trial, defendant testified that he gave the notes to Lowe personally, and did not know that the bank was named as payee; that the transaction took place in a room of the bank; that Lowe wrote up the notes, and he signed them, and passed them back to Lowe; that there was no talk about defendant borrowing money from the bank to pay Lowe or about the bank or Hanson paying Lowe any money.

N .J. Lock, a real estate man who helped to make the deal, was present in the bank during practically all of the time that the transaction occurred. He testified that Hanson called him on the phone, and told him that he would give $5 an acre commission if the deal went through and that he got that amount, $800 credit to his account in plaintiff bank; that Larson borrowed no money, and did not speak to Hanson about borrowing any money for the down payment; that Lowe stated that he wanted $1,000 in cash.

John F. Bergin, who was also present, testified that he was there in the room during every minute of the time negotiations were had; that Larson had no conversation at all with Hanson, and nothing was said between Lowe and Larson with reference to Larson borrowing money from the bank; that he heard Lowe say to Larson, "I have got to have $1,000 in money on this deal," and Larson replied that he did not have the money.

Hanson testified that he was in the front room of the bank during most of the time, and that Lock and Larson came from the back room to his desk, and said they had finally come to an agreement about the land, provided he should do his share, and, on his asking what he had to do with it, Lock said Larson needed $1,000.00 to close the deal, and his notes were all right; that thereupon Larson said that he would not need the money very long; that he had jewed Lowe down $25 an acre on the land, and wished Hanson to help him out by letting him have $1,000, to which he finally agreed, and went into the back room with Lock and Larson, and told Lowe he would help Larson out with $1,000 to pay him, upon which Lowe said that, before he could make the contract absolutely binding, he would have to write to his "associates" in the ownership of the land, whereupon Larson said they could fix everything up, and Hanson could take the notes right then, and, when Lowe found that it was all right, Hanson was to

pay the $1,000; that Hanson then instructed Lowe to draw up the notes as they are, saw Larson sign them, and the notes were then handed to him; that he kept them for some days until he was satisfied that Lowe's associates were satisfied with the deal; and that he then put the notes in the bank, and gave Lowe the $1,000.

At the time of the trial Lowe had ceased to have any connection with the bank, and his testimony was not taken.

In September, 1921, defendant paid the interest then due on the notes and in October the bank collected from a tenant on the land $150 for rent due defendant and applied it on the notes, leaving a balance of $850 principal on the notes. Hanson says, and defendant denies, that this rent was collected and applied on the note by direction of defendant.

On June 23, 1922, and before the commencement of this action, Lowe, pursuant to Laws of Minnesota 1915, c. 200, which authorizes cancellation of a contract for sale of real estate by a notice served on the vendee, served notice on defendant that he was in default in payment of interest on the deferred payment sums of $5,000 each, and that, unless payment of such interest, with interest to date of payment and costs of service of the notice, was made within 30 days from such service, the contract would be canceled and terminated, and all his rights thereunder forfeited, said cancellation and termination to take effect July 26, 1922. Defendant failed to pay, and the contract was terminated on that date.

By instructions, to which no exception was taken by either party, the court instructed the jury, in substance, that, if the notes sued on were given to plaintiff bank for the purpose of getting the money to make the cash payment to Lowe, and the bank advanced that amount to Lowe, the verdict should be for the plaintiff for the amount due on the notes, but, if they should find that the notes were given to Lowe in lieu of the cash payment of $1,000 mentioned in the contract, and were not given to the plaintiff bank for a loan of $1,000, which was to be paid to Lowe, and plaintiff did not pay Lowe the $1,000 as a loan on behalf of defendant, the verdict should be for defendant. The jury found for defendant upon all the issues in the case, and thereafter plaintiff, who had made a motion for a directed verdict prior to submission of the case to the jury, moved for a judgment notwithstanding the verdict, which motion was sustained, and judgment entered in favor

of plaintiff against defendant for the amount due on the notes, with costs, and, from the judgment and a motion denying a new trial, defendant appeals.

By the verdict, the jury found that no delivery of the notes was made to the bank, and that the bank did not make any loan to Larson. The situation then is this: Larson intended to, and, did, deliver the notes to Lowe in his individual capacity, he giving, and Lowe receiving, the notes, with intention to·vest title to the notes not in the bank, but in Lowe. The bank, being the payee named in the notes, could not be a holder in due course. Britton Milling Co. v. Williams, 45 S. D. 274, 187 N. W. 159, 21 A. L. R. 1352; Tripp State Bank v. Jerke, 45 S. D. 448, 188 N. W. 314.

Respondent argues that the notes were made and were payable in Minnesota, and therefore "should be interpreted according to Minnesota law. Concededly, the Minnesota law was not pleaded or proven at the trial," and, quoting from Meuer v. Chicago, M. & St. P. Ry. Co., 11 S. D. 94, 75 N. W. 823, 74 Am. St. Rep. 774, in "no event will the court presume that the statute law of another state is the same as the statute law of this state," contends that Britton Milling Co. v. Williams and Tripp State Bank v. Jerke cannot be followed in this case. But, in the very case from which respondent quotes, this court says it "will not presume that the law of another state is different from the law of the state in which the contract is sought to be enforced, and the party asserting or claiming it is different assumes the burden of proving that such is the fact." Thus respondent's argument on this point is refuted by the very authority that it appeals to.

In Winhorst v. Bergendahl, 21 S. D. 218, 111 N. W. 544, 130 Am. St. Rep. 715, it is said that, "in the absence of anything * * * to the contrary, it might be presumed that the Minnesota statute is the same as our own."

In the instant case no presumption need be made either way. The court is administering our own law, and, "in determining what shall be good defenses to actions instituted in this state, its courts must administer its own laws and not those of other states." Barry v. Stover, 20 S. D. 459, 107 N. W. 672, 129 Am. St. Rep. 949.

██ ██ Lowe, being the owner of the notes, could transfer them by delivery to the bank, and the bank, by paying value for them, which the evidence shows was done, would become the owner of the notes as assignee, and would hold them subject to such defenses as might be interposed by Larson against an assignee not a holder in due course, and who occupied the same position as if it had purchased, without indorsement, or after maturity, notes payable to the order of Lowe.

The question then arises, Can Larson set up against the bank, as such assignee, the defense that, subsequent to the assignment, but before the commencement of the action on the notes, Lowe canceled the contract, and forfeited Larson's interest in the land for purchase of which the notes were given?

As sustaining the action of the trial court in granting the motion for judgment notwithstanding the verdict, respondent cites First National Bank v. Persall, 110 Minn. 333, 125 N. W. 506, 675, 136 Am. St. Rep. 499; Azar v. Slack, 29 N. M. 528, 224 P. 398, but these cases are not in point. In Azar v. Slack, the decision is expressly based upon the ground that plaintiff was a holder in due course, and in Firt National Bank v. Persall the decision is evidently placed upon the same ground, the court saying:

"Plaintiff under the evidence is a bona fide holder of the note, a negotiable instrument purchased by it for a valuable consideration in the regular course of business."

Had Lowe taken notes payable to himself and held them until after he canceled the contract, he could not thereafter have enforced payment of the notes. "The exercise by a vendor of his right to declare a forfeiture * * * precludes his recovery of overdue installments of the purchase money." 27 R. C. L. 604; Waite v. Stanley, 88 Vt. 407, 92 A. 633, L. R. A. 1916C, 886.

██ And, where a note given for the purchase price of property is made payable to a bank at the request and for the benefit of the seller, it is subject in the hands of the bank to all infirmities in the original consideration between the maker and the vendor of the property, in the absence of circumstances creating an estoppel in equity. Bradshaw v. Miners' Bank, 81 F. 902, 26 C. C. A. 673; Jones v. Citizens' State Bank, 39 Okl. 393, 135 P. 373. The facts in Jones v. Bank, supra, were quite similar to those in

the case at bar. Jones, as part of the consideration for an interest in land which Wilson was to convey to him, at Wilson's request made a note for $400, payable to Citizens' State Bank, which advanced that sum to Wilson, but claims this was done as a loan to Jones at his request. Wilson failed to procure for Jones the promised interest in the land, and, in an action by the bank on the note, judgment on a directed verdict for plaintiff was reversed on appeal, on the ground that Jones was entitled to make any defense against the bank that he could have made against Wilson had the note been made to, and sued by, Wilson.

In Marckel v. Taplin (Sask.), 13 Dom. L. R. 118, Taplin made a contract for the purchase of land which provided for a cash payment of $400, in lieu of which he gave a short time note for that sum, which, after maturity, was transferred to plaintiff. Taplin went into possession of the land under the contract. The vendor terminated the contract by a notice apparently prepared on the same blank form as that in the instant case, and, in an action on the note by plaintiff, it was held that the notice terminated defendant's rights under the contract, whereby consideration for the note failed, and plaintiff could not recover.

We think the trial court erred in granting the motion for judgment notwithstanding the verdict, and the judgment and order are reversed, with directions to the trial court to enter judgment on the verdict as returned by the jury.

BURCH, P. J., and POLLEY and SHERWOOD, JJ., concur.